## Myers *against* Hodges.

A contract, by an administrator, to sell the real estate of his intestate, for a certain sum and on certain terms of payment, and that he will make the title through the medium of the orphan's court, is void, and no action can be maintained for a breach of its provisions.

WRIT of error to the court of common pleas of *Bradford* county.

Lyman H. Hodges brought this action on the case against William Myers and John F. Satterlee, to recover damages for breach of contract. The defendants were administrators of Harry Spalding deceased, who died intestate, seised of real estate. In January 1832, the following proposition and agreement were executed by the plaintiff and defendants.

Lyman H. Hodges proposes to William Myers, Esq. and John F. Satterlee, administrators of the estate of Colonel Harry Spalding, to purchase, upon the following terms, the home-farm of the said deceased, adjoining the north limits of the borough of Towanda, containing about eighty acres, more or less, now in the occupancy of Zenos Thomas. Said Lyman H. Hodges offers to pay down, in cash, as the purchase of the said farm, as soon as a title shall be made for the same, which is to be at or before the next May court for Bradford county. Possession to be given the 1st of April next: said Hodges to enter as tenant, paying the rent of 50 cents until the said May court: the said administrators having, until the week of the next court in Towanda, to accept or refuse this proposition, and being at liberty to reserve the burying ground and privileges, consisting of half an acre and a road to the same, from the sale.

The administrators, in case of accepting this proposition, will commence the necessary proceedings in the orphan's court, for the purpose of making title by public sale, at which the said Hodges is to bid the said sum of 2000 dollars, and if that shall be the highest sum bid for the same, the said Hodges shall have a deed for the same, conveying a good title. On condition that the administrators comply with this agreement, and the said Hodges shall fail on his part, then the said Hodges shall pay all costs and damages accruing to the said administrators, whose assent to this agreement is to be testified by their signing this agreement. Witness the hands of the parties this 31st January 1832. If the said Hodges should not comply with this proposition on his part, he is to keep the said place for the year commencing on the 1st of April next, upon the terms of paying 112 dollars rent for the same, on the same conditions as those prescribed in the lease to the present occupant, Zenos Thomas.

On the 1st of February 1832, the administrators petitioned the

[Myers v. Hodges.]

orphan's court, and the court made an order of sale, directing three insertions in the papers, and six notices to be stuck up, one on the premises, and five in the public places of the county. The sale took place on the 31st of March 1832, the time appointed, to the plaintiff, at the sum of 2000 dollars, he being the highest bidder. On the 8th of May 1832, the administrators reported this sale to the court, but stated that the five notices had not been put up. The court thereupon set aside the sale, and continued the order, and another sale took place in September 1832, when Obadiah Spalding became the purchaser, at the sum of 2251 dollars, and this sale was confirmed by the court.

The declaration contained two counts. In the first, the breach alleged was, that though the defendants commenced proceedings, as administrators, in the orphan's court, yet they neglected their duty in not causing publication and notice of sale to be given, as by the order of court they were required to do; by reason whereof their proceedings to effect a sale were set aside, by order of the court, on the 12th of May 1832, and the defendants refused to execute a deed to the plaintiff. In the second count, the plaintiff alleged that the defendants, on the 11th of September 1832, again exposed the premises to public sale, in pursuance of the order of the court, and the plaintiff again bid 2000 dollars, and offered to pay the said sum in cash, yet the defendants procured a person to bid at the sale on their behalf, above the sum of 2000 dollars, and afterwards refused to execute a deed to the plaintiff.

On the trial it was a subject of dispute whose fault it was that the notices were not put up. The plaintiff produced evidence to show that Myers, one of the defendants, engaged to put them up, but neglected to call for them. The defendants called witnesses to disprove this, and to show that, in practice, the clerk of the court had always attended to it. It appeared, in evidence, that the plaintiff took possession on the 1st of April, made and repaired the fences, and afterwards tendered the 50 cents rent. He also, at May court, tendered the 2000 dollars to Myers, who refused to receive it, stating that there was an illegality in the sale, and that the court would set aside the proceedings.

Evidence was also given, that Myers solicited persons to bid at the second sale, some of whom bid upwards of 2000 dollars; and that he directed the crier to hold on for a high price, and said it ought not to go for less than 2500 dollars. It also appeared that one bidder declined going on with his bids, from a reluctance to bid against Hodges: and that Hodges prevented another person from coming to the sale by desiring a friend of his to request him not to come. A verdict passed in favour of the plaintiff for the sum of 348 dollars, and judgment was rendered thereon.

*Overton* and *Conyngham*, for plaintiff in error, contended that the contract was against the policy of the law, and void. Cited Duling,

[Myers v. Hodges.]

*v.* Ward, 6 *Johns. Rep.* 194; Wilford *v.* Harlan, 8 *Johns. Rep.* 444; Briggs *v.* Tillotson, 8 *Johns. Rep.* 304; Thompson *v.* Davies, 13 *Johns. Rep.* 114.

*Williston*, for defendant in error.

The opinion of the Court was delivered by

SERGEANT, J.—Several points were presented to the court below, on behalf of the defendants, and error is assigned in the answers of the court. In none of them, however, does it appear that the court have erred, except in their answer to the first point; and we are of opinion that they ought to have directed the jury, that no action was maintainable on this contract.

An administrator has, by law, no interest in the real estate of the intestate. Where the personal estate is insufficient to pay the debts of the deceased, and to maintain and educate his children, the orphan's court, on the petition of the administrator, and his exhibiting an inventory, appraisement and account of debts, may order the public sale of so much of the real estate as they may deem necessary for these purposes, and in that event the deed is to be made by the administrator, and the proceeds received by him. This is the whole authority vested, by law, in the administrator; and it is plain that he is merely an officer designated by law for a special purpose, and clothed with a particular trust. He ought not, therefore, to be permitted to enter into a private contract that may interfere with the duties prescribed by law. If the obligations created by such contract are no more than those already imposed by law, the agreement is nugatory: if they differ, they may interfere with his lawful duties, and affect the interests of others for whom he is appointed to act. By the contract, in the present case, the administrators engage to sell for cash; fix the time of sale and of executing the deeds; and agree that Hodges, on bidding 2000 dollars, shall have a good title, if no other person bids beyond that sum. But the terms of sale, as well as the property necessary to be sold, and the necessity of selling it, are, by law, to be determined by the court, not by the administrator. Unforeseen circumstances may occur to render a modification of these arrangements necessary and proper, or to show that the price agreed on is below the real value; and in such case the interests of the estate would require a course of conduct in collision with that stipulated by the contract. After a sale is ordered, it is certainly the right, if not the duty of the administrator, to procure bidders for the property, and obtain the highest price. But to do so after such a contract as the present, would be a violation of the contract, if the purchase was thereby defeated. It has been held, that if two persons agree not to bid against each other at auction, and that each should participate in a purchase by one, such agreement is void, as being against the policy of the law, which requires that public sales shall be fair and free. 6 *Johns.* 194; 8 *Johns.* 444;

[Myers v. Hodges.]

13 *Johns.* 114.    That principle applies to the present case : because, by virtue of the agreement between the plaintiff and defendants, it is, in effect, stipulated, that the administrators shall not, under any circumstances, endeavour to procure a higher price, however right or proper it would otherwise be to do so.    A sheriff selling under a *venditioni exponas,* or a master in chancery under an order of court, would not be permitted to give an undue preference to one person, by suppressing exertions to procure the highest price, or inducing a peremptory sale at a fixed time.    The law is jealous, when it entrusts an officer with the execution of a duty, that he shall be governed solely by its own regulations.    Private contracts are properly applicable only to dealings with a man's own rights, or acts done under a private authority.

The present case is a striking instance of the consequences resulting from such contracts.    For one breach relied on was, that at the second sale the administrator procured a person to bid beyond the 2000 dollars, which, though a breach of the contract, was manifestly for the benefit of the creditors and children.    So, it became apparent by the second sale, that notwithstanding the obstacles arising from the events which had occurred, the property brought 251 dollars more than the sum contracted for.    This sum was, in all justice and equity, the right of the deceased's creditors and representatives, and not of the plaintiff; yet he seeks to recover it, under a pretence of damages occasioned by non performance of the agreement.

Judgment reversed, and a *venire facias de novo* awarded.