## Miles *against* Diven.

The advertisement and conditions of sale of real estate by an orphans' court, determine the responsibilities of the vendee; and not the representations of the administrator; which, being beyond the scope of his special agency, are to be taken, like those of any third person, at the risk of the vendee.

Where such representations are fraudulent, or in case of mutual mistake, the purchaser's only remedy is an application to the orphans' court, before confirmation of the sale, to set it aside; and even then, the sale cannot be set aside as to part, and confirmed as to the residue of the land.

ERROR to the common pleas of *Centre* county.

This was an action by Evan Miles and John Foster, administrators of Samuel Miles, deceased, against John Diven, to recover the purchase money of a tract of land, sold by the plaintiffs, as administrators, by an order of the orphans' court, for the payment of debts to the defendant. The petition to the orphans' court, described the land as a tract containing two hundred and forty-one acres; it was advertised and sold as such, and confirmed by the court. The land was in fact composed of two adjoining surveys, one of which, ran up upon a mountain, and was greatly inferior in quality to the valley tract. The sale was made as of an entire tract, containing two hundred and forty-one acres, at 18 dollars per acre, and was so returned and confirmed. The defence set up was, that previously to the granting of the order of sale, the administrators had been endeavoring to make a sale of the land, and one of them, John Foster, went to the land with Mr. Diven, the defendant, to show it to him, and while there, he pointed out the line of the land, as excluding the mountain tract, and including the valley land; that they then agreed upon the price, 18 dollars per acre, upon the faith of the representations made by the administrator, the title to be made through the medium of the orphans' court There had been previously an order to sell the land, which had been returned " unsold for want of bidders." After the contract with Mr. Diven, the order was renewed, and the land struck off to him at the price contracted for with the administrator. The land on the mountain was a distinct survey, and contained about forty-three acres. The court below charged the jury, " That nothing short of gross misrepresentation on the part of the administrator, which would amount to fraud, would sustain the defence made.

"Was there then such misrepresentation? Did Foster, by his mis-

[Miles v. Diven.]

representation, induce Mr Diven to believe, that the land in the mountain survey was not within his purchase? Did the administrators make their return with the knowledge that Diven refused to take the land within that survey? And especially, if that return was made without notice to Diven. The law will stand on the misrepresentation. Is it then clearly proved to your satisfaction, that such misrepresentation did exist; did induce the defendant to believe, that the land in the upper survey was not within his purchase, and that the one only sold, and the other only purchased, to the line of the valley survey? If you so find, then such misrepresentation would be fraudulent, and the defendant would not, under the circumstances of this case, be compelled to take the small tract. But to authorize such a decision, and to set aside the return and sale as to this part, you ought to be well satisfied of the fact, that such misrepresentation existed. There was to be a resurvey; we think in a case so situated, mistake will not be sufficient. It must be misrepresentation, and such misrepresentation as imposed on the defendant, and induced him to believe, that he was not purchasing the upper tract. We agree that fraudulent misrepresentation, in a case situated like the present, will relieve the defendant; but the jury will be satisfied that it existed, before they set aside their sale."

The charge of the court was assigned for error.

*Miles* and *Merrill,* for plaintiff in error. The defence now made, should have been used to prevent the confirmation of the sale, if founded on fact; and if sustained here, it is but a collateral inquiry into the decree of the orphans' court, which cannot be. 2 *Watts* 486; 11 *Serg. & Rawle* 431; 14 *Serg. & Rawle* 186; 4 *Rawle* 175; 9 *Serg. & Rawle* 162; 3 *Watts* 494; 5 *Watts* 91.

*Potter,* for defendant in error. The administrator acting as the trustee of the heirs and the officer of the law, may be guilty of such fraud as to vitiate his acts. The court below said, that the defence was not available, unless there was gross fraud, which the jury found. He cited 13 *Serg. & Rawle* 167; 9 *Serg. & Rawle* 431; 2 *Penns. Rep.* 218; 13 *Serg. & Rawle* 304.

The opinion of the Court was delivered by

SERGEANT, J.—If the verdict and judgment for the defendant in this case should stand, the creditors and minor children of the intestate, for whose benefit the law empowers the administrator to make a public sale, must sustain a heavy loss, because the administrators, privately and without authority, undertook to contract with the defendant to sell him the land, and in so doing, mistakenly pointed out the boundary. This is beside the duty of the administrator. He is not the source to which one designing to purchase, is justified in resorting for information respecting the land of the

intestate. The administrator may be presumed to be acquainted with the personal estate, and competent to make representations or contracts in regard to it. But the real estate, with its title papers and muniments, descends to the heirs. The administrator is but an agent employed by the law, for a special purpose. He cannot travel out of the limits assigned him. His representation previously to the sale, is no more than that of a third person, and it must be considered the folly of the purchaser to rely upon it. The principles decided in Myers *v.* Hodges, 2 *Watts* 381, that the administrator cannot contract beforehand for the sale of the land, or in any respect control the course prescribed by the law, decides the present point. If he cannot bind the interests of the creditors and children by his previous contract, he cannot do so by his representations, by undertaking to communicate knowledge, which the law no where supposes him to possess, or authorizes him to give. Should a sheriff prior to the day of public sale, and without the directions of those interested, undertake to exhibit the boundaries of a tract of land belonging to the defendant, which he expected to sell on a *venditioni exponas,* who would suppose he could bind the parties by such representation, should the purchaser be so remiss as to confide in it, if it should prove inconsistent with the real boundaries of the tract as sold? In the same manner, in the case of an administrator, who is merely the instrument of the law to effectuate the sale by public vendue, and in no other manner, it is by the advertisement and conditions of sale that the responsibilities of the vendor and vendee are to be determined, and any information the purchaser chooses to ask of the administrator beforehand, he takes at his own risk, just as he does that given by another person. It appears by the evidence in this case, that the administrator was ignorant of the boundaries of the tract, that he mistook the line, and while making a private bargain with the defendant, some time prior to the sale, (and, it would seem, even before the order of the orphans' court, under which the sale was made,) informed the defendant that the tract contained no mountain land. It turned out that about forty acres of the two hundred and forty-one, were mountain land. The petition and order of sale, however, were for two hundred and forty-one acres; the advertisement and description were of the same quantity, and that was the quantity the defendant purchased at the vendue, at 18 dollars per acre. The defendant entered into possession, paid part of the purchase money, and now contends that on account of this misrepresentation of the administrator, he is authorized to retain the choice part of the farm, viz: one hundred and ninety-eight acres seventy perches, at that price, and reject the residue. This would be highly unjust. If there even had been such a mutual mistake as would invalidate the purchase, equity would dictate that the vendee should either affirm or disaffirm the sale; that he should give up all or keep all. It would be a fraud on the children and creditors, and occasion a

heavy loss to those who were innocent of the transaction, if under such circumstances, the defendant could construe the contract so as to keep the best part of the land at a price intended to be the value of the whole, and throw on them the mountain land, which, separated from the rest, is worth little or nothing.

This is the utmost the defendant could have obtained by application to the orphans' court, to set aside the sale before confirmation; for that court would not have confirmed a part and set aside the rest.   It would have required the defendant to take all or none. This was the proper course for the defendant to take, to obtain relief from his purchase, even had there been ground for alleging, (which, however, I do not perceive,) that there was a fraudulent misrepresentation by the administrator.    The effect would still have been only to enable the defendant to set aside the sale.    And admitting that he would not be precluded in this suit from alleging a fraud practised by the administrator, the consequence would be the same.    The contract would be declared void, and the parties restored to their original position; the defendant surrendering up the land, and the accounts between the parties for moneys paid and interest on the one hand, and for rents and profits on the other, settled according to the equitable circumstances of the case.

But there is no evidence of fraud, and application was not made to the orphans' court to set aside the sale; on the contrary, the sale was confirmed, and the defendant is not justified in refusing to comply with his contract.

Judgment reversed, and *venire de novo* awarded.