# De Haven's Appeal.

1. Misrepresentations at an Orphans' Court sale, made by the administrator, as to the title to the land sold, constitute ground for setting aside the sale, on the application of the purchaser, before final confirmation of the sale.

2. Schug's Appeal, 14 W. N. C., 49, followed.

3. Where exceptions have been filed to the confirmation of an Orphans' Court sale by one claiming adversely to the estate, and these exceptions have been overruled and the sale confirmed, this is not such a confirmation as will prevent the purchaser, who has not paid the purchase-money nor received a deed, from having the sale set aside on his showing good grounds therefor.

4. The administrator of B advertised and sold seventeen acres of land as the property of B. At the sale C claimed ten acres of the land. The administrator, by his counsel, thereupon assured bidders that B's title was good, and that if there was any dispute about it the purchaser should not be bound by the sale. It was afterwards shown that B had no paper title to the ten acres claimed by C, and that after C's death a part of these ten acres was sold to persons who took deeds from C's administrators. There was evidence to show that B had occupied the land for over twenty-one years, though whether adversely or not did not appear.

*Held*, without deciding as to the merits of B's title, that this was not such a title as a chancellor would force upon an unwilling purchaser, and that there was no reason why an Orphans' Court should do so, and that the sale should be set aside.

May 19, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Lancaster county:* Of January Term, 1884, No. 141.

This was an appeal (by special allocatur) by Clayton L. DeHaven from a decree refusing to set aside a sale of real estate sold by order of said court, as prayed for by the appellant, the purchaser at said sale, and confirming the sale.

The facts as they appeared from depositions taken to support the petition of Clayton L. DeHaven, were as follows:

Perry Martin, the reputed owner of the land in dispute, died on June 10, 1881. Letters of administration on his estate were granted to Adam Overly. Under an order of the Orphans' Court the administrator advertised and sold seventeen

acres and forty perches as the property of Perry Martin, deceased.   At the sale Roland Diller claimed about ten acres as belonging to himself, and said, "whoever would buy the property would buy a lawsuit."   H. M. Houser, a member of the Lancaster Bar, acting as counsel for the administrator, then publicly announced that Perry Martin had a good title to the whole tract of land, and urged those present to bid for the property without fear of loss.   The property was advertised as the "real estate late of Perry Martin, deceased."   The printed advertisement was as follows:

PUBLIC SALE.—On Saturday, January 28, 1882, by virtue of an order of the Orphans' Court of Lancaster county, will be sold at public sale, at the public house of Capt. Abm. Setley, in New Holland, said county, the following described real estate late of Perry Martin, deceased, viz.: All that certain piece or tract of land in East Earl Township, containing seventeen acres and forty perches, more or less, with a two-story stone house thereon, situated near the road leading from Spangler's Mill house to Green Bank Post-Office, adjoining properties of David Rutt, John Sandoe, Lewis Diller, Daniel Overly, John Royer, Wilson Brubaker, Widow Martin and Caroline King. Persons wishing to view the property before the sale can call on Daniel Overly, residing near by.   Sale to commence at seven o'clock, P. M.; terms made known by

ADAM OVERLY,
Administrator.

The evidence as to Houser's representations at the sale is fully stated in the opinion of this court.   Clayton L. DeHaven purchased the land and paid ten per cent. of the purchase-money.   On March 27 exceptions to the confirmation of the sale were filed by Roland Diller, who claimed a portion of the land sold.   These exceptions were overruled, and the sale confirmed by the court, because Diller's title was not in any way affected by the sale.

On August 27, 1883, Clayton L. DeHaven presented his petition praying the court to set aside the sale.   The court granted a rule to show cause why the sale should not be set aside and the ten per cent. returned to the purchaser.   This rule was subsequently discharged, PATTERSON, J., delivering the following opinion:

" The above rule was asked for and granted on the application of the purchaser at the Orphans' Court sale referred to. The rule of *caveat emptor* is potent in such sales.   In the present case the sale made by the order of the Orphans' Court was absolutely confirmed before this rule to set aside was

applied for, and even equities, if now shown, cannot relieve the purchaser in this proceeding. Under the uniform ruling of the Supreme Court in such cases, we cannot see how relief can be granted, under this rule, to the purchaser. The facts shown by the depositions taken, and read on the argument, are conflicting: King *v.* Gunnison, Admr., 4 Barr, 171; Miles *v.* Diven, 6 Watts, 148; Richter *v.* Fitzsimmons, 4 Watts, 251; and other cases might be cited. We must assume the decree of confirmation to be valid, and therefore must, in this case, overrule the motion to set aside the sale made under the order of the Orphans' Court, &c.

" Rule discharged."

DeHaven thereupon took this appeal, assigning for error the action of the court in discharging the rule.

*Eugene G. Smith* and *G. C. Kennedy*, for appellant.—The court had the right and power to relieve the purchaser in this proceeding. The previous confirmation was not absolute as to the purchaser until the purchase-money was paid and the deed delivered: Hepting's Est., 1 Lancaster L. R., 45; Leshey *v.* Gardner, 3 W. & S., 314; Demmy's Appeal, 7 Wright, 168; Hays's Appeal, 1 P. F. S., 62; Schug's Appeal, 14 W. N. C., 49; Armstrong's Appeal, 18 P. F. S., 411.

*D. G. Baker* and *H. M. Houser*, for appellee.—An Orphans' Court sale is a judicial sale, and the principle of *caveat emptor* applies to the purchaser: Fox *v.* Mensch, 3 W. & S., 444; King *v.* Gunnison, 4 Barr, 171; Bickley's Adm. *v.* Biddle, 9 Casey, 276. No defence can be made against the payment of the purchase-money of a judicial sale: Bashore *v.* Whisler, 3 Watts, 490; Miles *v.* Diven, 6 Id., 148; Dawson *v.* Sims, 16 S. & R., 371. The decree of the Orphans' Court confirming the sale is conclusive: Robb *v.* Mann, 1 Jones, 301; Klingensmith *v.* Bean, 2 Watts, 486; Bell's Appeal, 21 P. F. S., 465; Banes *v.* Gordon, 9 Barr, 426; Vandever *v.* Baker, 1 Harris, 121.

Mr. Justice GREEN delivered the opinion of the court, October 6, 1884.

There was no occasion for the administrator or his attorney to make any representations, assertions or stipulations at the sale, in regard either to the quantity of the land sold, or the title to it. Had the purchaser bought in the absence of any interference, or inducements held out by the administrator to persuade the appellant to buy, the maxim of *caveat emptor* would certainly have applied, and we would probably not have felt justified in reviewing the refusal of the court below

to set aside the sale. So also if the sale had been confirmed, purchase money paid and deed delivered, the transaction would be regarded as closed and beyond the reach of the courts. But here the application for relief was made to the Orphans' Court which had ordered the sale before the sale was confirmed, and while the whole matter was yet within control of the court. Had it been a clear case of a considerable discrepancy in the quantity of land sold it would have been the duty of the Orphans' Court, on the application of the purchaser, to have relieved him by setting aside the sale. Schug's Appeal, 14 W. N. C., 49. In this case the property was advertised as a tract of land containing seventeen acres and forty perches more or less with a two-story stone house thereon. The administrator testified that he advertised only the right, title and interest of the decedent, in the land in question. But in this he was clearly mistaken, as the printed advertisement contradicts him flatly in this respect, and De Haven's acknowledgment of purchase is of the property described in the advertisement, and not of a mere claim of title to, or interest in it. It is entirely undisputed that the attorney for the administrator said repeatedly at the sale, publicly and to all bidders, that the title was perfectly good, and that purchasers need have no hesitancy in bidding on account of the title. He testifies to this himself. Other witnesses testify that in addition to this he said that if there was any dispute about the title the purchaser would not be bound to take the property; also, that possession and a good title would be delivered on the first of April or there would be no sale. The appellant testified that when Roland Diller gave notice that he owned ten acres of the land in dispute, Houser, the attorney for the administrator, "got up for Adam Overly and told his crier to go on and sell the property; if he could not give a clear title for this and good possession on the first of April the ten per cent. which they demanded of the purchaser, would be paid back and the sale would be nothing; he not only said this once, but he said he should not hesitate in bidding on it, if everything was not right the sale would be nothing." He then added that he would not have bid on the property after Diller's notice, had it not been for the statements of Houser, and that he did bid on it and buy it because of those statements. Another witness, Henry Usner, also testified to the same declarations, and that he, too, bid for the property on account of Houser's statements, and would not have bid except on that account. George K. Diller, another witness, testified that after Diller gave notice of his title to the ten acres, " Mr. Houser told the auctioneer that he should go ahead with the sale; he should sell seventeen acres and forty

perches of land as the estate of Perry Martin; that if there would be any dispute about the sale that they would refund the ten per cent. that's paid on it, and that Roland Diller had nothing at all to do with the property; he said he would see that there was a clear title given or the ten per cent. would be refunded and there would be no sale; he repeated it several times and took an oath to it more than several times . . . . . . Mr. Houser declared this before all the people that were there, and the bar-room was crowded: I mean by dispute about the sale, dispute about the title to the seventeen acres and forty perches. He used the words 'dispute about the sale'; he said if there was any dispute about the title to this seventeen acres and forty perches he would refund the money." There was more testimony of a similar character which it is not necessary to repeat. In addition to the foregoing it was proved that Roland Diller held deeds for ten acres of the land in dispute, that Perry Martin, the decedent, had no deed or other paper title, so far as could be ascertained, for any part of the ten acres, and that after Roland Diller's death part of the ten acres was sold to other persons who took deeds for the same from Roland Diller's administrator.

In this condition of things the purchaser applied to the Orphans' Court before confirmation of the sale, asking the sale to be set aside and the ten per cent. paid to be refunded.

It is certain that a chancellor would not force such a title as this upon an unwilling purchaser, and we do not know of any reason why an Orphans' Court should do so. We said in Schug's Appeal, *supra:* "Judicial sales, especially those made under the direction of the Orphans' Court, should be so conducted as not to mislead or entrap bidders. Notwithstanding the maxim *caveat emptor* is applicable to such sales, it is still the duty of those who conduct them to act in good faith, and, as far as possible, avoid any misdescription or misrepresentation as to the quality or quantity of the property offered for sale." While it is true that the risk of the title in Orphans' Court sales is in ordinary cases taken by the purchaser, and a defective title, after confirmation, affords no defence in actions for the recovery of the purchase-money, yet it is also held that relief will be granted even in cases of this kind if application is made before confirmation: Miles *v.* Diven, 6 Watts, 148; King *v.* Gunnison, 4 Barr, 171; Fox *v.* Mensch, 3 W. & S., 444. It is also undoubted that the court retains entire control over the sale until, and even after, confirmation, and may or may not confirm it, according to its sense of justice in the particular case: Demmy's Appeal, 7 Wright, 155. In the present case we of course do not assume to decide whether Perry Martin's title to the ten acres in question is good or

[Cline's Appeal.]

bad.  Some evidence was given to show that he had occupied it for twenty-one years and upwards, but whether that occupancy was of the character necessary to give title by adverse possession does not appear in the testimony.  But it does appear by satisfactory testimony that the appellant was induced to bid by means of representations, assertions and promises which the administrator had no right to make or to authorize, and if the sale is confirmed he will be deprived of the right to defend against the payment of the purchase-money no matter how worthless the title may be.  We do not think that courts of justice ought to be parties to such transactions, and as the administrator is the mere agent of the court in effecting the sale, all complicity of the court ought to be avoided by refusing, in the exercise of its sound discretion, any confirmation of a sale accomplished by such means as were employed in this case.  For these reasons, we think the learned court below ought to have granted the relief prayed for and set aside the sale to the appellant, and directed the money paid by him to be refunded.

Decree reversed at the cost of the appellee, and it is now adjudged and decreed that the decree of the Orphans' Court confirming the sale be opened and the sale set aside at the cost of the administrator; and it is further ordered that the administrator refund to appellant the amount paid by him on account of the purchase money.