JOHN S. McKIM AND OTHERS } *vs.* S. J. K. HANDY AND OTHERS. } MARCH TERM, 1848.

[CONSTRUCTION OF WILL—TRANSMISSION OF TRUST—APPOINTMENT OF TRUSTEES —COUNSEL FEES—LEGACY TO FEMALE INFANTS, WHEN PAYABLE.]

A TESTATOR devised real and personal estate to certain trustees, "to them and the survivor of them, and the heirs, executors, and administrators of the survivor" in trust "that the said trustees or the survivor of them, or the person or persons who may succeed them in the trust," may from time to time change the investments of the stocks and the proceeds thereof "with any accumulations of the fund generally," to reinvest, &c. HELD—

That it was the intention of the testator that the real and personal estate should remain in the same hands, and the trust was not transmitted to the executor of the surviving trustee, but the whole trust became vacant upon his death.

The recommendations of parties with reference to numbers, amount of interest and reasons assigned, will always be attended to upon the question of selecting a trustee, though the court is not bound by such recommendations.

Where trustees are entitled to costs out of the fund, they will be taxed as between solicitor and client, and if a trustee finds it necessary to employ counsel as to the proper management of the estate, he will be allowed such reasonable fees as he may have paid, but counsel fees paid by the successful party, in a contest as to who shall administer the trust, will not be allowed out of the fund.

A testator devised certain property in trust, and directed the trustees to pay to each of his grandchildren born and to be born, the sum of one thousand dol-

lars, "if they live to attain lawful age." One of the female grandchildren died after attaining eighteen years of age, but before twenty-one. HELD— That this legacy vested upon her attaining eighteen years of age, the intention of the testator being that the legacy should be paid to her when she was of *lawful age* to receive it, which, by the laws of this state, is eighteen years in the case of a female infant.

In this state the legal minority of a female infant, so far as the capacity to *receive* from the guardian is concerned, ends at the age of eighteen, and she is then entitled to receive her property, but for many purposes her legal minority does not cease until she is twenty-one years of age.

[The facts of this case are sufficiently stated in the following opinion of the Chancellor.]

THE CHANCELLOR:

The late John McKim, Jr., by his will, executed in December, 1841, devised and bequeathed to his sons, David T. McKim and John S. McKim, certain ground rents and stocks in the city of Baltimore, upon certain trusts. The devise is to them and the survivor of them, and the heirs, executors and administrator of the survivor, in trust and special confidence for the purposes mentioned in the will, and after directing the manner in which the trust fund shall be disposed of, the will proceeds as follows: "And in further trust that the said trustees or the survivor of them, or the person or persons who may succeed them in the trust, shall and may from time to time, as occasion shall require, or their judgment dictate, and the interest of the parties concerned render necessary, change the present investment of stocks or any of them and the proceeds thereof, with any accumulation from the income or profits of the fund generally, to reinvest in a safe and secure manner, and such reinvestments again to change, alter and renew, as often as occasion or circumstances in their judgment may render necessary or proper," &c.

John S. McKim, one of the sons, renounced the trust, and David T. McKim, the other son, who accepted and discharged the duties of trustee during his lifetime is now dead, having died in the year 1847, and having by his will appointed his wife executrix, and George H. Williams executor thereof.

The present bill was filed by some of the parties interested, against others, for the purpose of procuring the decree of this

court, appointing a new trustee to complete the trust. The bill assumed that the whole trust had become vacant by the death of the acting trustee, David McKim, and prayed that a new one should be appointed in his place, to whom the said ground rents should be conveyed and personal property be transferred, for the purpose of completing the trust left unexecuted by the deceased trustee.

In the progress of the cause, a difference sprung up among the parties in regard to the person who should be appointed trustee, and then it was maintained by some of them that Mr. Williams, stated to be the sole acting executor of the will of David McKim, was *virtute officii*, the trustee under the will of John McKim, Jr., so far as relates to that portion of the trust fund which consists of personal estate. This is the question which has been argued, and must be decided.

In the first place it may be observed that a separation of the real from the personal estate constituting the trust fund, would manifestly be in opposition to the will of the testator, and interfere very materially with the objects of the will. The direction is, that the trustees or the survivor, or the person or persons who may succeed them, may change the investments of the stocks and the proceeds thereof, with any accumulations from the income or profits of the *fund generally*. The whole is entrusted to the same keeping, and the same judgment which is to determine the propriety of selling and reinvesting the proceeds of the stocks is to decide upon the investment of the profits of the fund generally.

If, therefore, this court should decide that the trust, so far as the personal estate is concerned, has devolved upon Mr. Williams, as the executor of David McKim, by force of the words in the will of John McKim, Jr., "the heirs, executors, and administrators of the survivor," which it is said gives the power not only to the original trustee, but to the heirs, executors, and administrators of the survivor of them, then it would follow if the heirs of said David McKim were of age, that the trust as to the real estate devolved upon them, and thus it would happen that this property which the testator plainly designed should

remain in the same hands until all the purposes of the trust should be accomplished would be separated.

The case then would be precisely like the case of *Cole* vs. *Wade*, 16 *Ves.*, 45, in which the Master of the Rolls decided against the transmission of the trust to the executors of the surviving trustee, notwithstanding the testator in express terms had given the power not only to the original trustees, but to the heirs, executors, and administrators of the survivor of them. It may be said here as it was said there, that "the heirs and executors of the surviving trustee may be different persons, yet all the directions about the distribution, (the selling and reinvestment in this case,) proceed upon the supposition that the same persons are to select the objects and settle the proportions in which they are to take." But the Master of the Rolls proceeds to say, "if the real estate is to go to one, and the personal estate to another, it is entirely uncertain how the power is to be executed." So here if the real estate is to go to one, and the personal estate to another, how shall the power of reinvestment be executed.

It is contended in this case on the part of those of the *cestui que trusts* who desire the appointment of Mr. Williams, that the power given to the trustees by the will of the testator, does not imply a personal confidence, and that a power of this kind to trustees, their heirs, executors, and administrators is not confined to the original trustees, but passes to all who may sustain that character. But my decided opinion is, that the power here, does imply personal confidence, and that degree of confidence which a testator would not be very likely to repose in those whom he could not know, and of course he could not know the persons whom the trustees appointed by him would make their executors.

The judgment of the Master of the Rolls in the case of *Cole* vs. *Wade*, 16 *Ves.*, 27, which judgment was affirmed by the Lord Chancellor in 19 *Ves.*, 425, and against which no opposing authority has been produced, seems to me decisive of the question in this case. There being then no one to execute this trust, this court must appoint a trustee for the purpose.

Two persons are recommended, John S. McKim, one of the

trustees named by the testator, and George H. Williams, the executor of David T. McKim, the deceased trustee. A majority in amount of interest recommend the former, and when to this is added the consideration that he is the party selected by the testator himself for the execution of this responsible trust, I do not see how any other selection can be made by this court. No objection, so far as I am informed, exists to either of these gentlemen personally. On the contrary, they are both represented and believed to be every way worthy of the trust, and my preference of the one over the other does not imply the slightest want of confidence in the party not appointed. Mr. McKim is chosen because he is recommended by the parties having the largest interest in the trust fund, has himself a personal interest, and especially because the testator himself the author of the trust, selected him.

An order will be signed appointing John S. McKim, and clothing him with power to execute the trust upon his giving bond, with approved surety, in the penalty of fifty thousand dollars for the faithful performance of the trust.

[A decree was accordingly passed on the 12th of May, 1848, appointing John S. McKim trustee, in place of David T. McKim deceased. This trustee subsequently resigned the trust, when a controversy again arose as to his successor, which the Chancellor decided by the following opinion, delivered on the 20th of September, 1848.]

THE CHANCELLOR:

John S. McKim, the trustee appointed by the decree of this court to fill the vacancy occasioned by the death of David T. McKim, having resigned the trust, it has become necessary to appoint another to execute the powers and duties which by that decree were conferred upon him.

The parties interested have named two persons, Haslett McKim, of the city of Baltimore, being recommended by one portion of the cestui que trusts, and George H. Williams, of said city, by another. Two-thirds concur in the recommendation of the former, and one-third of the latter, and this numer-

ical weight in favor of Mr. McKim is sustained by at least an equal amount of interest.

It has been declared by this court upon several occasions that the recommendations of parties with reference to numbers, amount of interest, and reasons assigned, are always attended to upon the question of selecting a trustee, and the propriety of the observation is manifest, as in the absence of controlling circumstances to the contrary, there seems to be a peculiar fitness in consulting those whose interests are at stake. The court, it is true, is not bound by such recommendation, as it is clear beyond question, and it is conceded all round that in the selection of a person as trustee, the court exercises a sound discretion upon a survey of all the circumstances of the case.

There does not appear in this case any fact which should outweigh the influence which numbers and amount of interest ought to have in guiding the discretion of the court, unless it is found in the circumstance that as the recommendation of the majority was gratified in the appointment of John S. McKim, who has declined, the wishes of the minority are now entitled to be respected. It is supposed the late Chancellor was governed by some such consideration as this in the case of *Williamson* vs. *Swann*, but as it does not appear upon the face of the orders that he acted upon this reason, and as I do not very clearly see why this alternation should be observed, I rather incline to think the Chancellor proceeded upon some other ground. At all events, if, as is not denied, the court should attend and give weight to the recommendation of the majority of those having an interest in the trust fund, the reason is very far from being obvious why this recommendation should be disregarded in the selection of a second, when the first person chosen refuses or declines to act, and I am, therefore, not prepared to adopt such a rule.

Considering that a majority of the persons concerned recommend Haslett McKim, and in view of the character of the trust, and all the surrounding circumstances of the case, I consider it proper to appoint him the trustee, and shall pass an order to that effect.

[On the 13th of October, 1848, John S. McKim and others filed a petition in which they state the filing of their petition for the appointment of a trustee to succeed David T. McKim, and the subsequent proceedings thereon, and that for professional services rendered by their solicitors therein, they had agreed to pay them $200. They then allege that this compensation should be paid out of the trust fund, and pray that the present trustee may be directed to pay the same. Upon this petition the Chancellor delivered the following opinion on the 27th of October, 1848.]

THE CHANCELLOR :

Upon the first presentation of the petition of John S. McKim and others, filed on the 13th instant, my impression was in favor of the application, but upon subsequent reflection, I am persuaded it would be establishing a new and, I cannot help thinking, a dangerous precedent. If in contests like the present it is understood that parties are to be allowed out of the fund their whole expenses, it occurs to me it would have a tendency to encourage litigation, and it would be difficult to restrain within reasonable bounds the extent to which the practice might be carried. Should this court declare that 'in contests here in regard to the appointment of a trustee in a case like the present to take charge of the trust estate, the party who is successful, or all the parties are to be paid out of the fund, their costs not only as between party and party, but as between solicitor and client, it would seem to follow that the same principle of taxation should be adopted in the Orphans Court when disputes arise there in reference to the right of administration upon the estates of deceased persons. Why should this court say that when controversies spring up here as to the right to administer a trust, the ordinary rule as to the taxation of costs shall be departed from, and the estate burdened with all the expenses, ordinary and extraordinary, and the Orphans Court, when similar controversies arise there, act upon a different rule ? It is very far from the meaning of the court to impute to these parties an intention now or at any other period to indulge in a

spirit of litigation at the expense of the trust estate, but it is obvious that an order directing counsel fees to be paid out of it would in many cases produce such a result.

It is believed, that no precedent can be found for the present application. The rule is, no doubt, a general one, that when personal representatives, and other trustees, are entitled to costs out of the fund, the costs will be taxed as between solicitor and client, and it is said in the books, that when a trustee finds it necessary to employ or advise with counsel, as to the proper management of the trust estate, he will, when his accounts come to be taken, be allowed under the head of just allowances, such reasonable fees as he may have paid. *Fearns* vs. *Young*, 10 *Ves.*, 184; 3 *Daniell's Ch. Pr.*, 1586. The rule with regard to taxation of the costs of the heir at law, who is brought before the court in the case of a charity, can have no application. It seems to be settled, that in such a case, if he makes no improper point, he will be allowed his costs as between solicitor and client. *Currie* vs. *Pye*, 17 *Ves.*, 462. And the practice in England, upon creditor's bills, of making this favorable taxation for the benefit of the suing creditor, when the estate has proved insufficient, seems equally inapplicable, even if such practice obtained here, which, however, is not understood to be the case.

Considering this application, then, unsupported by precedent, and believing the granting it would have an injurious tendency, I shall dismiss the petition, but without cost, as it was a point which, under the circumstances, was proper to bring to the notice of the court.

[A further opinion was delivered in this case on the 5th of January, 1849, upon the petition of John M. Duncan. The facts are stated in the opinion.]

THE CHANCELLOR :

The question now presented arises upon the petition of John M. Duncan, administrator of Ann S. Duncan.

The deceased was one of the grandchildren of the late John

McKim, Jr., and having died after attaining the age of eighteen years, but before twenty-one, and unmarried, the question presented is, whether she is entitled to the benefit of a provision in the will of her grandfather, who died in the year 1842. The will places certain property in the hands of trustees, in trust, that the same be held by them, "and the income and profits to receive and take as a fund out of which they shall, as soon as practicable, pay to each one of his grandchildren living and of age at his decease, and to those who are minors, and to those who may hereafter be born, and live to attain *lawful age*, the sum of one thousand dollars each."

It is insisted by certain of the parties having an interest in the question, that the terms "lawful age," as used in this will, mean the full age of twenty-one years, and as the bequest was contingent upon the legatee attaining that age, it never vested, but sunk in the residuum for the benefit of those entitled thereto.

' That the minority of females, as well as males, continues until twenty-one, at common law, is too clear for dispute, and I do not understand that there is any thing in our legislation which abridges the period to every intent and purpose, though we have several acts of Assembly which confer capacities upon females under twenty-one, which they would otherwise be incompetent to exert.

Thus, the act of 1798, *ch.* 101, *sub. ch.* 12, *sections 1 and 15*, limits the period to which guardians may be appointed by the Orphans Court to a female infant, to the age of sixteen years or marriage, when the guardianship ceases, and the ward or husband, as the case may be, is entitled to receive from the guardian her property.

The act of 1829, *ch.* 216, *sec.* 5, declares that the guardianship of females shall continue to the age of eighteen or marriage, and the 6th and 7th sections of the same act, require the guardian upon her attaining that age to deliver her property to her, and gives to her receipt or release, executed before the Orphans Court, the same effect precisely as if she were of the full age of twenty-one years.

There can be no doubt, therefore, that a female, at the age of eighteen years, is entitled to receive her property of her guardian, and may release and acquit him in respect thereof. But, still, it is said, her legal minority does not cease until she is twenty-one years of age, and it is very clear, I think, that for many purposes, it does not.

We are here, however, construing a will, and the question is, what did the testator intend by the term "lawful age?" Did he not mean that age at which his female grandchildren would be entitled by law to receive their estates from their guardian? My opinion is, he did so mean, and if he did, of course his intention must prevail, although for many purposes the legal minority of the legatee does not terminate until she attains the full age of twenty-one years.

The language of the will is, that the trustees shall, out of the funds provided for the purpose, pay to each of the grandchildren, born and to be born, the sum of one thousand dollars, if they live "to attain lawful age." Lawful age for what? Why lawful age to receive. That age at which, according to our legislative enactments, they are entitled to demand and receive from their guardians all their property and to give valid releases therefor. The testator must be presumed to have known the law, and that at the age of eighteen a female ward became entitled to her property from her guardian, though she remained subject to all the disabilities incident to a condition of legal minority, but those which the acts of Assembly removed. It is to be presumed the testator intended the trustees should "pay" when the legatee became entitled by law to receive, and that by express legislation is in the case of a female when she attains the age of eighteen.

The cases referred to, if any confirmation could be required, of language so explicit as the legislature has employed, conclusively show, that the legal minority of a female, so far as the capacity to *receive* from her guardian is concerned, ends at the age of eighteen, and that she is at that age entitled to receive her property. *Davis* vs. *Jacquin & Pomerait,* 5 *H. & J.,* 100; *Bower's adm'x* vs. *State, use of Dryden,* 7 *H. & J.,* 32; *Fridge* vs. *State, use of Kirk,* 3 *G. & J.,* 104.

The trustees under the will of Mr. McKim may, I think, with propriety, be regarded as testamentary guardians, or as guardians appointed by the Orphans Court, and the testator is to be presumed to have intended that they should pay to his legatees, at the period when such guardians would, by the statute, have been required to settle with and pay to their wards. My conviction is very strong, that if the testator had been asked, at what age he intended his granddaughters should be entitled to the money in question, he would have said, at the age when by law they would be entitled to the possession of their property.

An order will be passed in conformity with these views.