[No. 542. August 26, 1893.]

## LOLA MONTOYA DE ANTONIO, Appellee, v. J. W. MILLER, Executor and Testamentary Guardian Under the Will of WILLIAM KANZENBACH, Deceased, Appellant.

Will—Devise, Payable on Becoming of "Legal Age"—Construction of Statutes.—Where a testator, in his last will and testament, devised the residue of his estate to his executors, named in the will, in trust for the education and maintenance of his two minor children, and directed that "as and when they become of legal age, the share of each shall be turned over to them, and if either of said children shall die before becoming of age, the share of such deceased child shall go to the survivor," such devisees, in the absence of any statute providing otherwise, are not entitled to their respective shares on marrying before arriving at the age of twenty-one years. Section 1024, Compiled Laws, 1884, providing that "the guardianship over men and women shall cease with their marriage," refers to their personal control; it does not mean to declare them of legal age.

Appeal, from a judgment for plaintiff, from the Second Judicial District Court, Bernalillo County. Judgment reversed; Freeman, J., dissenting.

The facts are stated in the opinion of the court.

Bernard S. Rodey for appellant.

The full age of either male or female is twenty-one, until which time they are considered as infants. 1 Am. and Eng. Encyclopedia of Law, title Age; Brown's Law Dict. [Sprague's Ed.]; Bouvier's Law Dict.; Coke on Litt. 78.

The marriage of a female minor does not terminate her minority under the statute. It simply says that the guardianship of men and women shall cease on their marriage. Comp. Laws, 1884, sec. 1024.

Vol. 7 n. m.—19

WILLIAM H. WHITEMAN for appellee.

Guardianship ceases with the marriage of the ward. Jones v. Ward, 18 Tenn. (10 Yerg.) 159; Ward v. Laferty, 19 Neb. 439, 627; Chubb v. Johnston, 11 Tex. 469; White v. Latimer, 12 Id. 61; Bartlett v. Cowles, 15 Gray, 445; State v. Joest, 46 Ind. 235; Tyler on Infancy, 245, and cases cited. That is equivalent to saying that minority ceases upon marriage.

O'BRIEN, C. J.—William Kanzenbach died testate, declaring in a clause of his last will and testament as follows: "All the residue of my estate, real, personal, and mixed, I give, devise, and bequeath to Lola Montoya and Eduardo Montoya, children of Anastasia Montoya, of Cabezon, New Mexico, the same to be held by my executors hereinafter appointed, in trust for the education and maintenance of said children; and, as and when they become of legal age, the share of each to be turned over to them, and, if either of said children shall die before becoming of age, the share of such deceased child shall go to the survivor of them." After the death of the testator, and on the ninth day of February, 1891, Lola, one of said legatees, with the consent of her mother, married Domingo de Antonio. She was then sixteen years and nearly four months old. J. W. Miller, the appellant, was one of the testamentary trustees, and he only qualified, and as such was appointed by the probate court of Bernalillo county. After Lola's marriage she demanded her share of the estate of the appellant, and, upon his refusal to comply, she applied to the probate court for an order requiring him to do so. This order she secured, from which the appellant, Miller, in his fiduciary capacity or as guardian, appealed to the district court, where the judgment of the probate court was affirmed. From the lat-

ter judgment Miller brought the present appeal to this court.

The only question presented for determination on this appeal is, did the appellee upon her marriage be-

*Devise, payable on becoming of "legal age:" construction of statutes.*

come of legal age, so as to be entitled to receive, by the terms of the will, her portion of the estate? It is not claimed that other parts of the will throw any light upon the clause cited, or indicate any special meaning to be given to the phrase, "legal age," as employed by the testator. Do the words as here used mean full or partial legal age? If the former, the common law fixes the beginning of such period on the day preceding the twenty-first anniversary of birth, and the same has not been changed by any statute of this territory; if the latter, a person may be of legal age for certain purposes before arriving at the age of twenty-one years, both at the common law and under the statutes. In arriving at a conclusion the testator's meaning should control. The property was his, and he had a right to say how and when his legatees should take it. Our duty is to carry into effect the intention of the testator. If he meant by the words employed that the appellant should hold the moiety of the property in trust for the benefit of Lola until she arrived at the age of twenty-one years, her marriage before her arrival at that age would not entitle her to its custody or control. But, if he had so intended, would he not have written in his will, until she "arrives at lawful age, or marries?" In suits growing out of wills the terms "of age" and "of lawful age" have frequently been construed by the courts, and almost uniformly, as meaning twenty-one years. Minority ceases when one becomes "of age" or "of lawful age," and not before; and marriage can not change that status in the absence of statutory enactment. We must presume, when no contrary intent is apparent, that the testator used the words in their

ordinary meaning.    Section 1024, Compiled Laws,
1884, providing that "the guardianship over men and
women shall cease with their marriage," has reference
to personal control, but does not purport to declare
them of legal age.  Guardianship of the person is abso-
lutely inconsistent with the conjugal rights of husband
and wife.  But that statutory declaration does not mean
that a married man of twenty years of age may vote
or hold office, or that a woman married before reaching
her majority has the period of her legal minority
diminished.    The common expressions "under age"
and "over age" are not ambiguous, and always refer to
the period of twenty-one years, unless in states where
women, by statutory enactment, reach majority before
that period.    It is not claimed that such change has
ever been expressly made in this territory.

It is held by the supreme court of the state of
Ohio, construing a will containing this provision: "In
the third place, it is my wish and desire that the prop-
erty may be kept together until my youngest child
shall become of age, and to make use of it to the best
advantage for supporting and educating my children;
and, at the time the youngest shall become of age, the
property shall then be disposed of and divided equally
among my children" (the testator's wife was about
fifty years old, and of his eight children the youngest
was then under seven)—that the estate left the wife
by another provision did not determine till the youngest
child had attained the age of twenty-one years.    Howe
v. Fuller, 19 Ohio, 51.    And in a case in the state of
Virginia, where the testator, after directing that his
estate should be equally divided among his seven chil-
dren, added:  "It is my will and desire that if any of
my children die before they attain to legal age, or
without a lawful heir, in either case that all such prop-
erty as they may receive in the division of my property
return to my surviving children or their lawful heirs,".

—it was held that the limitation over took effect upon the happening of either contingency, and that upon the death of one under age, etc., his share vested in the survivors.   Brooke v. Croxton, 2 Gratt. (Va.) 506. The case of McKim et al. v. Handy et al., decided by the high court of chancery of Maryland in 1849 (4 Md. Ch. 236), is not in conflict with the views herein expressed.   The chancellor, in delivering the opinion of the court, says: "It is insisted by certain of the parties having an interest in the question that the terms 'lawful age,' as used in the will, mean the full age of twenty-one years; and, as the bequest was contingent upon the legatee attaining that age, it never vested, but sunk in the residuum for the benefit of those entitled thereto. That the minority of females, as well as males, continues until twenty-one at common law, is too clear for dispute, and I do not understand that there is anything in our legislation which abridges the period to every intent and purpose, though we have several acts of assembly which confer capacities upon females under twenty-one, which they would be otherwise incompetent to exert. Thus the act of 1798, etc., limits the period to which guardians may be appointed by the orphans' court to a female infant to the age of sixteen years or marriage, when the guardianship ceases, and the ward or husband, as the case may be, is entitled to receive from the guardian her property.   The act of 1829 (chapter 216, sec. 5) declares that the guardianship of females shall continue to the age of eighteen or marriage, and the sixth and seventh sections of the same act require the guardian, upon her attaining that age, to deliver her property to her, and gives to her receipt or release, executed before the orphans' court, the same effect precisely as if she were of the full age of twenty-one years.   There can be no doubt, therefore, that a female at the age of eighteen years is entitled to receive her property of her guardian, and may release and acquit

him in respect thereof; but still, it is said, her legal minority does not cease until she is twenty-one years of age, and it is very clear, I think, that for many purposes it does not. We are, however, construing a will, and the question is, what did the testator intend by the term 'lawful age?' Did he not mean that age at which his female grandchildren would be entitled by law to receive their estates from their guardian? My opinion is he did so mean, and, if he did, of course his intention must prevail, although for many purposes the legal minority of the legatee does not terminate until she attains the full age of twenty-one years." The chancellor continues: "The language of the will is that the trustees shall, out of the funds provided for the purpose, pay to each of the grandchildren, born and to be born, the sum of one thousand dollars, if they live to attain lawful age. Lawful age for what? Why, lawful age to receive; that age at which they are, according to our legislative enactment, entitled to demand and receive from their guardians all the property, and to give valid releases therefor." It is manifest that the conclusion reached is based upon the peculiar statutory enactments of that state. Under them a girl of eighteen years has a right to demand her property of its legal custodian, and to execute valid releases therefor. Under our laws she has no such right. The statutory declaration that " the guardianship over men and women shall cease with their marriage" can not, by the most strained construction, receive any such interpretation. Release from the legal guardianship of one's person does not imply the duty of a trustee to surrender, or of a married female minor to demand from such trustee, a legacy intrusted to his care and control, for delivery to beneficiaries as soon as they severally attain lawful age. If Lola has such right, why not her brother, Eduardo, if he marry during his minority? If such were the testator's intention, why did he not so express it in his will, by adding after the words

"of lawful age" "or marry?" Plainly he meant what he wrote, and he wrote exactly what he intended. That intention we must respect. No legal enactments existed in this territory that could warrant the testator in assuming, as the Maryland testator was warranted in assuming, that the legatee could legally receive or receipt for the trust fund before arriving at the full age of twenty-one years. Should she die before attaining legal age, her brother is, by the express terms of the will, entitled to the residue of the entire legacy. That contingency is possible. We can not adopt such construction of the plain, unequivocal language of the will as would defeat, in such event, the provident and generous intentions of the testator.

The question of guardianship does not properly arise under this will. The estate is granted to the two children, share and share alike, to be held in trust by the executor for their support and education during minority; one half thereof to be delivered to her and him "as and when" each attains full legal age, and, if either die before "coming of age," the survivor to take his or her share. It is as executor, and not as guardian, that Miller received the trust. His qualification as guardian, and erroneously holding or dealing with the trust fund as such, can not change the terms of the will under which he received it. The last clause of that instrument indicates the nature of his office, and reads as follows: "I hereby appoint Rudolph Habaland, etc., and John Miller, etc., executors of this will, and request that the probate court allow them to qualify without giving bond or security. If either one shall not qualify, the other may act alone." Habaland did not qualify. The reading of this, in connection with the granting clause before cited, shows that this appellant, by the plain terms of the will, holds the estate in trust as executor, and not as guardian. We do not express any opinion as to what our decision

would be were this appellant a mere guardian, holding, as such, the property of his ward after marriage. We simply determine the rights and duties of appellant and appellee as fixed by the will. The rule adopted in the McKim case is not in conflict with these views. By the laws of Maryland a female arrives at "legal age" for certain purposes, when eighteen years. One of such purposes is the reception of a legacy. The court in that case accordingly held that where a legacy was given to a female child, if she lived to attain "lawful age," such female was entitled to receive the same as soon as she attained the age of eighteen years. There is no such law in this territory. Hence the judgment of the court below, so far as it requires appellant to pay over to appellee her moiety of the trust fund, or to disturb him in the due execution of such trust, is reversed.

FALL and SEEDS, JJ., concur.   FREEMAN, J., dissents.