PAULINE M. PERKINS

*vs.*

SAFE DEPOSIT AND TRUST COMPANY AND
AUGUST WEBER, Trustees, et al.

*Construction of Instrument—Meaning of "Legal Age."*

A father conveyed property in trust for his children, the
income to be applied, so far as necessary, for their support and
education "during their minority," and each son's share of the
principal to be paid over to him on his arrival at the age of
twenty-one years, while as to the share of the daughter the
entire net income was to be paid to her after her arrival at
"legal age." Exactly similar language was used by the father
in creating a trust by will executed on the same day. *Held,*
that "legal age" meant eighteen years, this being the age at
which a female can give a valid receipt or release to a guardian
or trustee.

*Decided April 6th, 1921.*

Appeal from the Circuit Court of Baltimore City (Stan-
ton, J.).

The cause was argued before Boyd, C. J., Briscoe,
Thomas, Pattison, Urner, Stockbridge, and Offutt, JJ.

*Alfred S. Niles,* with whom were *Niles, Wolff, Barton &
Morrow* on the brief, for the appellant.

*Harry N. Baetjer,* with whom were *Venable, Baetjer &
Howard* on the brief, for the appellees.

Pattison, J., delivered the opinion of the court.

Ottmar Mergenthaler was, in the year eighteen hundred
and ninety-nine, and for many years prior thereto, conducting
a machine shop and engaged in the work of inventing and

perfecting machinery and appliances in the City of Baltimore.

On October 10th of that year, Mergenthaler being in bad health and wishing to arrange his affairs in contemplation of death, formed a corporation by the name of the Ott Mergenthaler Company to purchase and acquire his business in said city and to acquire and hold his interest "in any and all inventions, patents and patent rights, and all royalties and monies arising therefrom, and all agreements and contracts made by him with various companies, corporations or individuals in this or foreign countries, relating to any invention or patents."

The property and assets so to be acquired by the corporation from Mergenthaler were valued at fifty thousand dollars and this was the amount named in the certificate of incorporation as the capital stock of the corporation, consisting of five thousand shares, each of the par value of ten dollars.

On the 13th day of October, 1899, three days after the formation of the corporation, Mergenthaler and his wife conveyed said property unto the corporation in consideration of four thousand nine hundred and ninety-one shares of its stock; and on the same day he, with the assent of his wife, granted, bargained and sold unto the Safe Deposit & Trust Company and Abner Greenleaf of said city, and their successors in the trust, the said four thousand nine hundred and ninety-one shares of stock

"to be held (as in said deed stated) by said trustees for the following uses and trust purposes, that is to say: To hold said property for the use and benefit of my children, so that during their minority the net revenue arising therefrom, or so much as in the judgment of my said trustees may be necessary and proper, shall be applied by said trustees to the liberal support, maintenance and education of my children; and as each of my sons shall arrive at the age of twenty-one years, I direct that an equal share of the principal shall be paid over and delivered to them respectively; but as to the shares of my daughters, I direct that

the same shall continue to be held by my said trus-
tees for the term of their natural lives, paying over to
them after they arrive at legal age, into their own
hands and not into the hands of others, whether claim-
ing by their authority or otherwise, the net income
therefrom, and upon their deaths, respectively, I direct
the trust as to their share shall cease, and I hereby
grant and assign the same to their children, then liv-
ing, and the then living descendants of any deceased
children of theirs *per stirpes,* and in default of issue,
then to such person or persons as they may respect-
ively name in their last wills and testaments, full
power and authority being hereby conferred upon
them to execute wills in case of their deaths without
issue.  Should any of my sons die under twenty-one
years of age leaving issue, such issue shall be entitled
to his share absolutely, and in default of issue, then the
share of such son shall go to and belong to my then
surviving children, and the descendants of deceased
children, *per stirpes,* except that the shares of my said
daughters shall be held by said trustees upon the same
trusts as their original shares are held.  I further pro-
vide that any income not expended by my said trustees
during the minority of my children shall be added to
the principal."

After the execution of said deed, but upon the same day of
its execution, Mergenthaler executed his last will and testa-
ment, disposing of what remained of his estate after the afore-
said grant.

After a specific bequest of two thousand dollars and a de-
vise to his wife of one-third of all the rest and residue of his
estate, he devised the remaining two-thirds thereof to the Safe
Deposit & Trust Company and Abner Greenleaf and their
successors in trust, to be held by them for exactly the same
uses and trust purposes as those mentioned in said deed to
them from Mergenthaler and wife for the stock of said cor-
poration.  The language in the will creating the trust estate

being identical with that used in said deed in relation to the trust estate thereby created.

Mergenthaler at the time of the execution of said deed had three sons living, Fritz, Eugene and Herman, and one daughter, Pauline, the appellant, now the wife of Rody P. Perkins.

They all survived their father, who died on the 28th day of October, 1899. The daughter, the youngest of his children, who was born on the 27th day of October, 1893, was then but six years of age.

By both the deed and will the income upon the appellant's shares of the trust estates thereby created, or so much thereof as in the judgment of the trustees should be thought necessary, was to be applied by them to her liberal support, maintenance and education, during her minority, and upon her arrival at *"legal age"* the entire net income was to be paid to her so long as she lived.

The appellant, upon reaching the age of eighteen years, on the 27th day of October, 1911, thinking she had reached *"legal age,"* and was entitled from that time to the entire income from her shares of the trust estates created by said deed, made demand upon the trustees to pay to her from that time all of said income. The trustees, however, were in doubt whether they should pay to her from that time all of said income or whether they should continue to pay to her, until she reached the age of twenty-one years, only so much of said income as they thought necessary for her support, maintenance and education, and invest the balance as a part of the corpus of the trust estate.

In 1905 the corporation ceased to do any business except to collect the royalties owing to it from time to time upon the patents owned by it, and therefore it was thought unnecessary to continue the capital stock of the corporation at so much as fifty thousand dollars, and consequently it was reduced to ten thousand dollars, consisting of one thousand shares each of the value of ten dollars; of which stock two hundred and fifty shares were held by said trustees in trust for the appellant. The stock greatly increased in value and

the income therefrom was at the time of the arrival of the appellant at the age of eighteen years much greater than her needs and, as she had great confidence in the trustees and in their ability to manage and invest the surplus over and above the requirements for her support, maintenance and education, she agreed with them that they should continue to invest the surplus income, with the understanding, however, that in consenting thereto she waived no rights in connection therewith, but reserved to herself the right, at any time, either before or after she reached the age of twenty-one years, to proceed to enforce her claim thereto, if necessary.

In the bill filed by the appellant in this case it is alleged, and in the answer filed thereto it is admitted, that the trustees, between the eighteenth and twenty-first birthdays of the appellant, invested from income derived from sources other than dividends upon the stock of the Ott Mergenthaler Company twenty thousand eight hundred and twenty dollars and twenty-two cents and from the dividends issued upon said stock, forty thousand one hundred and thirty-seven dollars and fifty cents; and the prayer of her bill asked that the trustees be required to turn over to her the said investments amounting in all to sixty thousand nine hundred and fifty-seven dollars and seventy-two cents.

The court below, upon bill, answer and evidence taken, held that the said two sums so invested "represent receipts on account of the corpus of the trust estate, and constituted a part of said corpus"; and therefore decreed that the trustees should hold the said investments as part of the corpus of said estate. It was from that decree that this appeal was taken.

The sole question in this case is at what age was the appellant of *"legal age,"* and by the deed entitled to receive from the trustees the entire income from her share of the trust estate thereby created. Was it at the age of eighteen years as contended by the appellant, or at the age of twenty-one years, as contended by the appellees, and as decided by the court below.

In *McKim* v. *Handy,* 4 Md. Ch. 228, John McKim, Jr., by his will placed certain property in the hands of trustees, and from the income and profits of the same, they, as soon as practicable, were to "pay to each of the grandchildren living and of age at his decease, and to those who are minors, and to those who may hereafter be born, and live to attain *lawful age,* the sum of one thousand dollars each.

It was insisted in that case, by certain parties having an interest in the question, that the term *"lawful age,"* as used in the will, meant the full age of twenty-one years, and as the bequest was contingent upon the legatee attaining that age and as she died after arriving at the age of eighteen years but before reaching the age of twenty-one years, it never vested, but sank in the residuum for the benefit of those entitled thereto.

Those in whose hands was placed the property, from the proceeds of which were to be paid the legacies of the grandchildren of McKim, were named in the will as trustees. The Chancellor, however, after referring to the Act of 1829, Chapter 216, which declares that the guardianship of a female continues to the age of eighteen years, and requires the guardian at such time to deliver her property to her, and gives the same effect to her receipt or release therefor as if executed by her after attaining the age of twnty-one years, held that such trustees were to be regarded as testamentary guardians or guardians appointed by the Orphans' Court.

The Chancellor in addition thereto said: "We are here, however, construing a will, and the question is what did the testator intend by the term *'lawful age'?* * * * Lawful age for what? Why lawful age to receive. That age at which, according to our legislative enactments, they are entitled to demand and receive from their guardians all the property and to give valid releases therefor. The testator must be presumed to have known the law, and at the age of eighteen a female ward became entitled to her property from her guardian. * * * It is to be presumed the testator intended

the trustees should 'pay' when the legatee became entitled by law to receive, and that by express legislation is, in this case of a female, when she attains the age of eighteen. My conviction is very strong, that if the testator had been asked, at what age he intended his granddaughter should be entitled to the money in question, he would have said, at the age when by law they would be entitled to the possession of their property."

It is true, as suggested by the appellees, that the trust estate in the *McKim case* was created by will and not by deed, as in the case before us, but whether by will or by deed the intention of the testator or grantor, as the case may be, must be sought, and in seeking such intention, it must be presumed that the testator or grantor had, at the time of the execution of the will or deed, full knowledge of the Acts of the General Assembly of this State, then in force, that in part removed the common law disabilities of females under the age of twenty-one years, and it is in the light of that knowledge that we are to construe the language used by the testator or grantor in ascertaining his meaning or intention.

Since the decision in the *McKim case,* other statutes have been passed in this State, still further removing the disabilities of females under the age of twenty-one years, which were in force at the time of the execution of the deed in this case. For example, Sections 7 and 8 of Article 79, which authorizes any female over the age of eighteen years to execute valid receipts, releases and final discharges to trustees appointed by any court of equity for the proceeds of the sale of real estate or leasehold property; and Section 10 of the same Article which provides that, "the release or receipt of a woman over the age of eighteen years to any person or persons, body corporate or body politic, for any money paid, property delivered or obligation satisfied shall be a good and valid discharge of such person or persons, body corporate or body politic in the same manner and to the same extent as releases or receipts of the same character are now by law

good and valid when executed and delivered by persons of the full age of twenty-one years."

The deed in this case conveys the property to the trustees named therein, in trust to hold the same for the use and benefit of the grantor's children, both sons and daughters "so that *during their minority*, the net revenue arising therefrom, or so much as in the judgment of my said trustees may be necessary and proper, shall be applied by my said trustees to the liberal support, maintenance and education of my children; * * * As to the shares of my daughters, I direct that the same shall continue to be held by my said trustees for the term of their natural lives, paying over to them, *after they arrive at legal age* * * * the net income therefrom," etc.

Under Section 10 of Article 79 above quoted, there can be no doubt as to the power and authority of the appellant to have given the trustees, after her arrival at the age of eighteen years, valid receipts or releases for the net income derived from her share of the trust estate, if under the deed the same was payable to her at such time, and whether it was then payable thereunder depends, as we have said, upon the intention of the grantor, which is to be gathered from the language of the deed, considered in connection with the statutes mentioned, of which the grantor is presumed to have had knowledge at the time of the execution of the deed.

It will be observed that the duties of the trustees, imposed upon them by the deed, were to receive the income of the trust estate and during the minority of the testator's children apply it, or so much of it as they in their judgment thought necessary, for the support, maintenance and education of the children. This provision applied alike to the sons and daughters.

The duties imposed upon the trustees were practically those of guardians and in the mind of the grantor the necessity for the performance of such duties ceased when the sons as well as the daughters reached that age when, under the

law, such duties were no longer regarded as necessary and when they could by their releases duly acquit the trustees for payments made to them under the deed, which in the case of the sons was upon their arrival at the age of twenty-one years, and in the case of the daughters at the age of eighteen years.

That this was the intention of the grantor is further borne out by the provisions of his will made upon the same day of the execution of the deed, disposing of the remainder of his estate, in which he uses the language of the deed, word for word, in creating a like trust estate for the benefit of his said children.

There can be no doubt that, under the will, the daughters were entitled to the net income of the estate upon their arrival at the age of eighteen years, *McKim* v. *Handy, supra,* and it is presumed that the grantor knew of the effect of the language of said will.

It may, therefore, be inferred, we think, from the use in the deed of the language of the will, that the grantor intended that the effect given to such language in the will should be given to it in the deed.

As to the sons, the grantor in the deed says, "as each of my sons shall arrive at the age of twenty-one years, I direct that an equal share of the principal shall be paid over and delivered to them respectively." He does not use the term of *"legal age"* as to them, but when he refers to the daughters he uses that term, without any qualifying or explanatory expression as to how old they must be before reaching such legal age.

It is argued by the appellees that because the grantor directed the money to be paid to the sons when they arrive at twenty-one, that he intended to qualify the term *"legal age"* when used in referring to the daughters, by saying they were not to receive the net income from their shares of the estate until they arrived at *"legal age,"* the age of twenty one years.

This deduction of the grantor's meaning, we think, is unwarranted from the language used. As to both sons and

daughters, the trustees were to hold the estate during their minority; the sons to receive their shares when they reached the age of twenty-one, which in fact was the time at which they ceased to be minors. The trustees were to hold the income from the daughters' shares and apply the same to their support, maintenance and education during their minority, and when they attained *"legal age"* the net income therefrom was to be paid to them.

It is not indicated, by the grantor's reference to the time when the sons should receive the money, that it was his intention that the minority of the daughters continued to twenty-one years, or that they did not attain legal age until that time. The minority of females for many purposes continues to the age of twenty-one years, but by the statute some of these disabilities, as we have said, have been removed. And one of these statutes, Section 10, Article 79, authorizes them to receive money due and owing to them and to give due acquittances therefor at the age of eighteen. In our opinion it was the intention of the grantor that the income from the appellant's share of the trust estate was to be applied to her support, maintenance and education to a time when she could give to the trustees a proper and effective acquittance therefor upon the payment of the same to her, and this she could do at the age of eighteen years.

It follows, therefore, that the decree of the court below must be reversed.

> *The decree reversed and the case remanded that a decree may be passed in conformity with this opinion, the costs to be paid out of said fund.*