(Decided 29th March, 1883.)

FRANKLIN WILSON, Trustee, WILLIAM H. MARRIOTT, *et al. vs.* THE MARYLAND LIFE INSURANCE COMPANY OF BALTIMORE.

*Devise in Trust with power to sell—Extent of the Power—Confirmatory mortgage by Cestui que trust—What necessary to make such Confirmatory mortgage binding—Forbearance to sue—Equity.*

A will creating a trust contained the following clause: "My said trustee shall have power to invest, and change the investment of said moiety, and for that purpose to sell, convey and dispose thereof, or any part thereof, as often as he may think proper." HELD:

1st. That this power did not authorize the trustee to mortgage the property to secure the repayment of a loan.

2nd. That it was competent for the *cestuis que trust*, on arriving at age to confirm and make valid a mortgage executed by the trustee, to secure a loan, but to make such confirmatory mortgage binding on them, it must appear that they acted advisedly, with their eyes open, with information in regard to every material circumstance surrounding the transaction, with knowledge that the mortgage by the trustee was not made in pursuance of the power conferred

Wilson, Trustee, *et al.* *vs.* Maryland Life Ins. Co. of Baltimore.

by the will, and was not therefore binding on them, and that the money borrowed was expended by him for his own personal use, and not for the benefit of the trust estate.

3rd. That the confirmatory mortgage executed by the *cestuis que trust* could not be supported as a contract made in consideration of forbearance to sue on the mortgage debt.

If a *cestui que trust* through mistake of his legal rights and of the facts, assumes an obligation in respect of the estate, which he would not have assumed but for such mistake, equity will relieve.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed against the appellee by the appellants, who are the children of Mary C. Marriott, the testatrix in this case, and Franklin Wilson, as their substituted trustee, to have a deed of mortgage made to the appellee, by John McKim Marriott, the father of said children, now deceased, as their trustee, and in his own right as life tenant, under the will of the testatrix, and also a confirmatory mortgage made to the appellee by two of said children, after arriving at age, and after the death of their father, declared void, and for an injunction to restrain the appellee from proceeding to sell the mortgaged property, under said mortgages. A *pro forma* decree was passed dismissing the bill. From this decree the complainants appealed. The facts are sufficiently stated in the opinion of the Court.

The cause was argued before MILLER, YELLOTT, STONE, ROBINSON, and RITCHIE, J.

*E. Calvin Williams,* and *Severn Teackle Wallis,* for the appellants.

*Edward Otis Hinkley, Orville Horwitz,* and *Attorney-General Gwinn,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

After devising one-half of her property to her husband absolutely, and the other half in trust for him for life, with remainder to her children, the testatrix directed:

"My said trustee shall have power to invest and change the investment of said moiety, and for that purpose to sell, convey and dispose thereof, or any part thereof, as often as he may think proper," &c.

After the death of the testatrix, part of the property was under a decree for partition allotted to the husband absolutely, and part of it was allotted to be held subject to the trust declared in the will.

On the 22d September, 1870, the husband, who was also trustee under the will, in his own right, and purporting to act as trustee, executed to the appellee a mortgage of the property, thus allotted to him in trust to secure the payment of ten thousand dollars. The money thus borrowed, the proof shows was expended by the husband for his own personal use, and none of it applied for the benefit of the *cestuis que trust.*

The question is, whether the mortgage is valid, so far as it affects the rights and interests of the *cestuis que trust?* And this depends upon the construction of the power conferred on the trustee by the will. A power of sale, like all other powers, can be exercised only in the mode and upon the terms and conditions prescribed by the instrument creating it. Did the testatrix then, in authorizing the trustee to sell and dispose of the property devised to him in trust for the purpose of reinvestment, and for this purpose only, mean that he should mortgage it to secure the payment of borrowed money? or did she mean an *out and out sale or conversion of the property, and a reinvestment* of the proceeds arising from the sale, for the benefit of all parties interested under the will? Now it seems to us in the face of *Latrobe vs. Tyson,* 42 *Md.,* 325, the meaning of the words "sell and dispose," as used in this

connection, is hardly an open question. In that case, as in this, the trustee was authorized to "sell and dispose of the property," and in that case as in this, the trustee mortgaged the property to secure the payment of borrowed money. After full argument and full consideration, for all of us felt the law pinched hardly in that case, we were obliged to hold both on principle and on authority, that the power meant an "out and out sale," or "conversion" of the property; and that the trustee was not authorized to pledge it by way of mortgage.

If such then be the meaning of the words "sell and dispose," as denoting the extent of the power to be exercised by a trustee, is there anything on the face of this will to show that they were used by the testatrix in any any other or wider sense? We think not. On the contrary, looking to the nature and objects of the trust, and the character of the property, it is plain she never meant to authorize the trustee to mortgage it for borrowed money. Already had she given him one-half of her entire property, and the other half too, she had devised in trust for him for life, with remainder to her children. The property was an outlying tract, near the city limits, yielding but a small yearly income, and it might be to the interest of all parties concerned, that it should be sold in whole or in part, and the proceeds of the sale reinvested. With that view, for the purpose of changing the investment, the testatrix authorizes the trustee to sell and dispose of the property; and to say the trustee may do something else, that he may borrow money and mortgage the property, would be giving to the language used in conferring the power, and declaring the purpose for which it was to be exercised, a meaning not warranted by any sound rule of construction.

We come, then, to the confirmatory mortgage, executed by two of the appellants, after their arrival at age. It was competent, no doubt, for them to confirm and make

154        MARYLAND REPORTS.

Wilson, Trustee, *et al. vs.* Maryland Life Ins. Co. of Baltimore.

valid the mortgage made by their father as trustee, but every act of confirmation implies necessarily knowledge of the defect in the thing to be confirmed, and of the right to ratify or reject it. To make the confirmatory mortgage now relied on, as binding on the appellants, it must appear that they acted advisedly, with their eyes open, with information in regard to every material circumstance surrounding the transaction, with knowledge that the mortgage by the trustee was not made in pursuance of the power conferred by the will, and was not, therefore, binding on them, and that the money borrowed was expended by him for his own personal use, and not for the benefit of the trust estate. If their right to impeach the mortgage was concealed from them, or they acted through misrepresentations made to them, then their confirmation amounts to nothing. Such is the law in regard to confirmation and ratification. *Hoffman Steam Coal Co. vs. Cumberland Coal and Iron Co.,* 16 *Md.,* 456; *Cumberland Coal and Iron Co., vs. Sherman,* 20 *Md.,* 117; *Morse vs. Royal,* 12 *Ves. Jr.,* 354; *Smith vs. Kay,* 7 *H. L.,* 750.

Now what are the circumstances under which this confirmatory mortgage was executed? The trustee who was the father of the appellants except Wilson, died before the maturity of the mortgage, leaving four children, the *cestuis que trust,* under the will. Within *two months* after his death the mortgage is prepared by the appellee, reciting upon its face that the trustee's mortgage was made in pursuance of the power conferred by the will, and for the purpose in part of changing the investment, and for the benefit of the *cestuis que trust.* Thus prepared, and with these recitals, it is sent to one of the appellants, a young man twenty-five years of age, living in St. Louis, a thousand miles away. Without advice, and without information in regard to the real facts surrounding the transaction, without an intimation in regard to the doubts entertained as to the validity of the trustee's mortgage, and without a

suggestion as to their right to impeach it, relying upon the recitals in the mortgage, and in the belief that the power in the will had been properly exercised by the trustee, this confirmatory mortgage was executed, by which the appellant William, as also the appellant Margaret, who became a party thereto, bound themselves to pay not only what may have been their proportion of the mortgage debt of ten thousand dollars, but to pay the entire debt, including the *bonus of one thousand dollars* retained by the appellee at the time the loan was made, together with the interest computed on a compound system.   Whatever may be the presumption in favor of knowledge, ordinarily arising from the execution of a deed by one of full age, this presumption is not only rebutted, but the proof shows the appellants never would have signed the paper in question if they had been advised of their rights.   A confirmation under such circumstances as these is wanting, it seems to us, in every element necessary to constitute it a valid act.

But if invalid as a confirmatory mortgage, it is binding, it is said, as a contract made in consideration of forbearance to sue on the mortgage debt.   We shall not stop here to consider the law of forbearance, about which much may be said.   That it is, under certain circumstances, a sufficient consideration to support a contract is not denied. Whether the forbearance to sue on a contract not enforceable, provided the claim be made in good faith, is a question we need not decide in this case.   Such seems to be now the law in England, and it has the sanction of such eminent Judges as Cockburn, C. J., Blackburn, Mellor, and Lush, J.   *Callisher vs. Bischoffsheim, L. R.,* 5 *Q. B.,* 450, *decided in* 1870; *Cook vs. Wright,* 1 *B. & S.,* 566; *Wilby vs. Elgee, L. R.,* 10 *C. P.,* 500; *Ockford vs. Barelli,* 20 *W. R.,* 116, and *Haws vs. Venables, L. R.,* 7 *Exch.,* 239.

Nor shall we stop to consider whether the forbearance of a mere right of action against an heir-at-law, on a cov-

enant made by his ancestor, be a sufficient consideration. It may not be amiss to say, however, in passing, that the heir was not liable on such covenants, unless he had lands *by descent,* and further to say the proof in this case shows the father of the appellants other than Wilson, died insolvent. So there is no pretence that the heirs at law had anything in their hands liable for the covenants of their father.

But be all this as it may, this case stands on different grounds. We are dealing with an instrument of writing, executed by *cestuis que trust* after their arrival at age, and which the proof shows beyond all question was executed under a mistake both of law and fact. Now we take the law to be settled, that if one through mistake of his legal rights, and through mistake of facts, assumes an obligation which he would not otherwise have assumed but for such mistake, a Court of equity will grant relief; and especially is this the case if the mistake was induced or encouraged by the representations of the party benefited, or if he withheld information which, under the circumstances, it was his duty to impart.

Thus in *McCarthy vs. Delaix,* 2 *R. & M.,* 615, it was held that where one agrees to give up his claim to property in favor of another, such renunciation will not be supported, if at the time of making it he was ignorant of his legal rights, and especially if the party with whom he dealt kept back from him better information on the subject.

And so in *Broughton vs. Hutt,* 3 *DeG. & J.,* 501, where the heir at law of a shareholder, the shares of which were personal estate, and being ignorant of that circumstance, and supposing himself liable in respect of the ancestor's shares, executed a deed of indemnity to the trustees of the company, it was held he was entitled in equity to have the deed cancelled on the ground that it was obtained under a mistake of law and fact.

Wilson, Trustee, *et al. vs.* Maryland Life Ins. Co. of Baltimore.

And again in *Ramsden vs. Hylton*, 2 *Ves. Jr.*, 304, it was decided a sister was entitled to relief against a release executed by her in favor of her brother, in ignorance of her rights, under the marriage settlement or articles of the parents. Other cases might be cited in support of these views, especially where one has been misled by the acts and conduct of the party benefited. *Cooper vs. Phibbs, et al., Law Rep., 2 Eng. & Irish App.*, 129.

Now in this case, the proof shows beyond all question, that the confirmatory mortgage was executed by the appellants William and Margaret, in ignorance of *their legal rights,* and in ignorance *of the facts*, and upon the *faith of representations made by the appellee* in the mortgage. Such representations, we do not mean to say, were made for the purpose of misleading these appellants, but as a matter of fact they were misled by them, and to their prejudice. One thing is certain, whatever doubts the appellee had in regard to the trustee's mortgage, and it is plain it entertained doubts, they were not made known to these appellants. On the contrary, it was represented to them that the power had been properly exercised, and the money borrowed for their benefit.

In whatever aspect this case may be viewed, we are of opinion that the appellants are entitled to the relief prayed.

*Decree reversed, and cause remanded.*

(Decided 29th March, 1883.)