# Mulholland's Estate.

*Deed—Defective title—Recitals—Notice.*

1. When a purchaser cannot make out his title but through a deed which leads to a fact, he will be affected with notice of that fact.

2. Where the recitals in a deed show that the grantor has no title, the grantee is affected with notice of the defect of title as soon as he accepts delivery of the deed.

*Executors—Administrator—Trust and trustees—Confirmation of account—Distribution—Proceeds of sale of real estate—Defective title—Mistake.*

3. Where an executor under a power in a will sells an interest in real estate in which the testatrix had no title, files an account, and the proceeds of the real estate with other moneys of the testatrix are awarded to him as trustee, the purchaser of the real estate has no standing, six years after the date of the distribution, to demand that he shall be repaid out of funds in the trustee's hands, the amount which he had paid for the interest in the real estate. The mistake of law which the parties made with full knowledge of the facts, will not in such a case entitle the purchaser to equitable relief; nor has the orphans' court any power to set aside the sale and direct repayment of the purchase money to the executor.

4. No decree can be made upon a conveyance by an executor or trustee under a power conferred by will, unless the aid of the orphans' court is required to supply some omission in the terms of the instrument creating the power; much less can it set aside a sale made in pursuance of a testamentary power.

Argued March 25, 1909. Appeal, No. 391, Jan. T., 1908, by James McDevitt, Executor, from decree of O. C. Phila. Co., April T., 1902, No. 524, dismissing exceptions to master's report in Estate of Sarah Mulholland, deceased. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Exceptions to report of Henry G. Swayne, Esq., master.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in dismissing exceptions to master's report.

*John F. Gorman,* with him *Leo J. Gorman* and *William Gorman,* for appellant.—The orphans' court was without jurisdiction: Curran's Est., 28 W. N. C. 96; Bodder's Est., 30 Pa. C. C. Rep. 417; Odd Fellows' Sav. Bank's App., 123 Pa. 356; Tyson's Est., 191 Pa. 218; Lewis v. Lewis, 13 Pa. 82.

*Frederick L. Breitinger,* for appellee.—The jurisdiction of the orphans' court which is undoubted under the averments of the petition and the findings of the master, is not ousted by the facts set up in the answer of the appellant: Johnson's App., 114 Pa. 132.

Whether the fund was produced by a sale authorized by the orphans' court or under a power in the will, is immaterial, for the reason that while the power of sale is vested in the executor, the distribution of the proceeds is under the control of the court: Twaddell's App., 81 * Pa. 221; Fricke's Est., 16 Pa. Superior Ct. 38.

Where it is shown that funds have been wrongfully included in the account as trust funds or whose title or ownership is in another person to avoid circuity of action jurisdiction may be assumed by the orphans' court: Moore's Est., (No. 1), 211 Pa. 338; Tingle's Est., 12 W. N. C. 223; Irvine's Est. 209 Pa. 321; Kreimendahl's Est., 17 Pa. Superior Ct. 496.

OPINION BY MR. JUSTICE MESTREZAT, April 26, 1909:

This case is so clearly and radically wrong that all that is necessary to reverse it is to state the undisputed facts. The error of the master and of the court may be attributed to the manner in which the case was presented for their consideration.

James Mulholland died in 1876, leaving to survive him five children and a brother Felix. He was seized in fee of certain real estate in the city of Philadelphia at the time of his death, and his five children conveyed to his brother Felix "one undivided sixth part of and in all the real and personal estate of which James Mulholland died seized and possessed." Felix subsequently died intestate and left to survive him a widow, Sarah, and five children, all of whom died in their minority, intestate, unmarried and without issue prior to the death of

their mother. Sarah Mulholland died in 1901 and by her will, duly probated, appointed James McDevitt, the appellant, her executor. The will provides, inter alia, as follows: "And for the purpose of the better carrying my will into execution and effect, I do authorize and empower my executor James McDevitt to make sale of all my estate real, personal or mixed and of which I may die seized and possessed either at public or private sale and upon such terms as he shall judge best." The testatrix devised and bequeathed the residue of her estate to her "executor in trust to distribute the same among the several churches and charitable institutions hereinabove named or in his discretion to pay same from time to time for masses for the repose of my soul and the souls of my husband and our children."

By virtue of the authority contained in the will, James McDevitt, executor and trustee, executed and delivered a deed, dated January 6, 1902, and recorded the following day, to James Conway, conveying to him "all the right, title and interest of the said Sarah Mulholland deceased of, in and to" three lots or pieces of ground situate on the south side of Pine street and east of Eleventh street in the city of Philadelphia for the consideration of $2,750. The deed recites that the property therein described is the same of which James Mulholland died seized and of which his five children conveyed the undivided sixth part to Felix Mulholland who died intestate seized of the said undivided interest in the property and leaving to survive him Sarah Mulholland and five children, all of whom died prior to their mother in whom all their interest in the premises vested. The deed to Conway is in the ordinary form used by an executor and trustee to convey real estate in pursuance of authority contained in the will. It recites the title to the premises conveyed from Thomas Fraley in 1848 to Sarah Mulholland, the authority conferred by the will on the executor and trustee for making the sale, and the appointment of the executor and the probate of the will. It contains the usual special warranty against acts done or committed by the executor.

Conway in pursuance of the title vested in him by the

executor's deed took possession of the premises and has since occupied and used them as his own. On January 21, 1908, he presented a petition to the orphans' court of Philadelphia county setting forth, inter alia, that Sarah Mulholland died testate and the disposition made by her will of her estate; that the executor of Mrs. Mulholland had by deed dated January 6, 1902, conveyed to him "all the right, title and interest of the said Sarah Mulholland, deceased," in the three lots of ground in Philadelphia, referring to the recital in the deed that Felix Mulholland, the husband of Sarah, had died seized of the undivided sixth part of the premises leaving to survive him a widow and five children, and the death of the five children unmarried and without issue and that their interest in the premises vested in their mother; that the executor filed the account of his administration which was audited on June 30, 1902, "and by adjudication thereof distribution of the residue was awarded as directed in said will and the schedule of distribution as approved by the auditing judge." The petition further avers that the purchase money was paid; that at the time of the conveyance the executor was of the belief and opinion that the testatrix died seized of the said undivided sixth part of the premises; that testatrix, however, was not of the blood of the first purchaser of the said one-sixth interest in the premises and, therefore, the fee thereof did not vest in her on the death of the last surviving of her children but vested in the heirs and next of kin of her husband; that the facts relative to the title did not come to the knowledge of petitioner until October 15, 1907; and that the consideration money for the conveyance forms a part of the balance remaining in the hands of the executor and trustee and is undistributed. The petitioner prayed that the executor be ordered and directed to repay to him the purchase money with interest thereon.

The executor filed an answer in which he admits most of the facts averred in the petition. He admits that Conway paid the purchase money in the belief that the executor had the right to convey to him a good title in fee and that the executor was of the same opinion; that the executor has funds

awarded him sufficient to return to petitioner the amount paid by him as purchase money but avers that he refused to repay Conway the purchase money, as the money in his hands had been set apart by the adjudication of the orphans' court for a specific purpose, "and your respondent is informed and believes in law he has no right to divert it from this purpose unless protected by an order of your honorable court." The answer further avers that the executor filed an account which was duly adjudicated by the orphans' court, and attaches a copy thereof to the answer. The final decree confirming the account and directing distribution was made by the court on June 30, 1902, and contains, inter alia, the following: "The residue of this estate is given to the executor in trust to distribute the same amongst the churches named in the proportions and manner as set out in the will of deceased, and in his discretion to pay the same from time to time for masses for the repose of the soul of testatrix and the souls of her husband and their children."

The answer having been filed, the court appointed a master who made a voluminous report, granting the prayer of the petition and awarding restitution of the money paid by Conway to McDevitt, but permitting Conway to retain the title to the property conveyed to him by the executor. The reason for the conclusion of the learned master is stated by him as follows: "The master and examiner finds as a fact that the said Sarah Mulholland was not of the blood of the first purchaser of said one-sixth part of the property hereinbefore described, and that the aforesaid consideration of $2,750 was paid by the said James Conway unto the said James McDevitt, executor and trustee, by reason of a mutual mistake of fact, innocently committed and through no fault of either party thereto. It also appears that the parties to said mistake can be put in statu quo, no other rights having attached in the meantime." The learned court below in a pro forma decree dismissed the exceptions and confirmed the master's report absolutely. McDevitt, as executor and residuary devisee in trust, has taken this appeal.

It will be observed that the master committed manifest

error in finding, as he did, "that the facts in reference to the devolution of the title to said one-sixth part of the said property first become known to said James Conway and James McDevitt on or about October 15, 1907," as the deed executed by McDevitt and accepted by Conway recited the title and thereby disclosed the fact that Sarah Mulholland, the decedent, had no valid title to the interest in the premises in question. This was notice to Conway of the defective title in 1902: Jennings v. Bloomfield, 199 Pa. 638. When a purchaser cannot make out his title but through a deed which leads to a fact, he will be affected with notice of that fact: Mertins v. Jolliffe, Amb. 311. Equally apparent is it that there is no foundation for the finding by the master "that the parties to said mistake can be put in statu quo, no other rights having attached in the meantime," as the petition and answer show that the executor filed an account of his administration of the estate which included the sum paid by Conway to McDevitt, that the account was finally confirmed and distribution made in June, 1902, and that the fund realized by the sale of the property to Conway was distributed as part of the testatrix's residuary estate and passed to the trustee for the legatees nearly six years prior to the commencement of these proceedings. The master's findings of fact are in conflict with the evidence, and with their disappearance his conclusions must likewise fall. It may be that both parties to the deed were ignorant of the law, but with the full knowledge of the facts which the pleadings show they had, that of itself is no ground for equitable relief: Norris v. Crowe, 206 Pa. 438. And there are no special circumstances or facts in the case at bar that will aid the purchaser's ignorance or mistake of the law in moving a chancellor to grant the relief prayed for in the petition.

Under the undisputed facts disclosed by the evidence, the orphans' court had no power to set aside the sale and direct repayment of the purchase money to the executor. Such power would not exist in the orphans' court if this had been a sale made in pursuance of its own order. In such cases, the court unquestionably has the authority to control the sale

and protect a purchaser, but that authority must be invoked within a proper time and under a state of facts which will justify the exercise of the equitable powers of the court.   In De Haven's App., 106 Pa. 612, GREEN, J., delivering the opinion of the court, says (p. 614): "Had the purchaser (of real estate at an administrator's sale) bought in the absence of any interference, or inducements held out by the administrator to persuade the appellant to buy, the maxim of caveat emptor would certainly have applied, and we would probably not have felt justified in reviewing the refusal of the court below to set aside the sale.  So also if the sale had been confirmed, purchase money paid and deed delivered, the transaction would be regarded as closed and beyond the reach of the courts. But here the application for relief was made to the orphans' court which had ordered the sale before the sale was confirmed, and while the whole matter was yet within the control of the court."   In such case the orphans' court retains control over the sale even until after its confirmation, but as indicated in Justice GREEN's opinion it will not exercise its authority to grant relief to a purchaser in the absence of fraud and after he has paid the purchase money and received his deed.   There must be an end to such proceedings, and if a purchaser desires to relieve himself of a defective title, he must exercise diligence in ascertaining the defect and invoking the aid of the court to afford him protection.   The law requires reasonable diligence in a purchaser to ascertain any defect of title: Brush v. Ware, 40 U. S. 93; and when once ascertained, he must exercise a like diligence in asserting his right to have the sale set aside. The purchaser here appeals to the equitable powers of the court, and they are never called into activity except by conscience, good faith and reasonable diligence: Smith v. Clay, 3 Bro. C. C. 639, n.

We need not discuss or determine the extent of the powers of the orphans' court in setting aside a sale made by an executor in pursuance of a power contained in the will.  We have held that in a proper case, the orphans' court has power to review, set aside, and if necessary to order a resale of real estate made under a testamentary power: Dundas's App., 64

Pa. 325. But a sale under a power in a will need not be confirmed by the court, nor is any order of court necessary to authorize the executor to convey. No decree can properly be made upon a conveyance by an executor or trustee under a power conferred by will, unless the aid of the court is required to supply some omission in the terms of the instrument creating the power: Schwartz's Est., 168 Pa. 204. It may well be assumed, however, that the authority of the orphans' court to set aside a sale made in pursuance of a testamentary power is not more extensive than that exercised by the court over a sale made in pursuance of its own order. It is clear, as pointed out above, that had this sale been made by a personal representative in pursuance of an order of the orphans' court, that court would have refused, under the circumstances of this case, to set aside the sale or to order the repayment of the purchase money. Conway is affected with notice of the title which his own deed disclosed, and having accepted the title, taken possession of the premises, and retained them for more than five years, he cannot be permitted to attack the title and compel the executor to repay the purchase money. When he accepted the deed, he knew all that he knows to-day in regard to the title. The facts were all before him, and notwithstanding the finding of the master Conway was not ignorant of or mistaken as to the facts in the chain of the title which the executor conveyed. The deed itself convicts the master of error in this respect, and shows that in 1902 Conway was in full possession of all the facts relative to the title of Mrs. Mulholland to the property which her executor conveyed.

In addition to having accurate knowledge of the facts which would deprive him of the right to any relief in the orphans' court at this time, the money which Conway now seeks to have returned to him was charged to the executor in the account which he filed and was distributed in 1902 to the legatees as directed in the testatrix's will. Aside from any other reason, this of itself is an insuperable objection to the return of the money by the executor. He has disposed of it as directed in the will by order of the orphans' court, and he cannot now be required to refund it. As appears by the order

of the court awarding distribution, quoted above, the money is not now held by the executor for administration but in trust for the beneficiaries named in the will of the decedent. It is not in the power of the trustee to refund it to the executor for the purpose of repayment to the purchaser of the real estate. If the orphans' court had authority to compel the repayment of the money to Conway, it is now too late to invoke it. The facts of this case do not warrant any interference by the court with the sale made by the executor to Conway.

The decree of the orphans' court is reversed, and all the proceedings are set aside at the costs of the petitioner.