## ABEL ROSENTHAL *v.* SYDNEY R. TRAUB, ADMINISTRATOR.

### [No. 51, January Term, 1928.]

*Decided April 13th, 1928.*

The cause was submitted on briefs to BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Francis E. Pegram,* for the appellant.

*Allen A. Davis* and *Sidney R. Traub,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

Sydney R. Traub, administrator of Nathan Bass, deceased (appellee), entered into a contract with Abel Rosenthal (appellant) for the sale of three leasehold lots in Baltimore City, known as Nos. 825, 827, and 829 East Pratt Street, subject to annual ground rents aggregating $113.75, the price being $5,500 cash within thirty days upon the ratification of the sale by the Orphans' Court of Baltimore City. This sale was reported to the Orphans' Court, and that court passed the usual order *nisi* on the sale. Within the time allowed the appellant filed exceptions to the ratification of the sale, claiming that this property was subject to ground rents aggregating $193.75, whereas the contract of sale stated the same to be subject to ground rents aggregating $113.75. The Orphans' Court, after a hearing, dismissed the exceptions and ratified the sale as made. From this order the appeal here is taken. This necessitates the determination of whether or not the appellant, under the facts in this case, is liable for the payment of aggregate annual ground rents exceeding in amount the sum of $113.75.

The facts are that, on May 8th, 1783, William Spear leased to John Hanan lots 326 and 327 of Philpots Point at and under the yearly rent of $80, said lots being contiguous, and together fronting 100 feet on the south side of what is now Pratt Street, and 100 feet on High Street and Albemarle Street, which said rent was payable March 1st in every year. By mesne conveyances John S. Hanan, administrator, became the owner of the leasehold, and on July 7th, 1864, he subleased to William Wernburg that portion of the original 100 feet square lot which lies at the southwest corner of Pratt and High Streets, fronting 54 feet on Pratt Street, with a depth on High Street of 26 feet 6 inches, shown on the plat contained in the record as lot A. This sublease was under the yearly subrent of $80, payable on the 15th of September, and contained the following clause: "And the said parties of the first and second parts, for themselves, etc., hereby covenant that a payment by the said

lessee of the said yearly rent and the performance by him of the said covenants herein mentioned to be performed, the said lessee, his personal representatives or assigns, may, at all times, peaceably hold and enjoy the said premises without the let or interruption of the said lessors or any person whomsoever, and freed clear and protected from the claims and demands of all persons whomsoever, for or on account of any other rent than that hereby reserved thereon." Lots A and B were those sold under the contract in this case, and it is undisputed that lot B is now only subject to an annual ground rent of $33.75, but it is contended by the appellant that lot A is subject to two ground rents of $80 each, one created by the original lease from Spear to Hanan in 1783, payable March 1st, and the other created by the sublease of John S. Hanan, administrator, to Wernburg in 1864, payable September 15th. The appellee contends that the appellant can only be required to pay the original ground rent of $80 created in 1783, due March 1st, for two reasons: First, because the ground rent established by the sublease of 1864 has been extinguished, for the reason that there is no evidence that this rent has ever been demanded or paid; and, second, because the covenant in the sublease against the lessee paying a greater rent than $80 fully protects the appellant.

Section 27 of article 53 of the Code provides: "Whenever there has been no demand or payment for more than twenty consecutive years of any specific rent reserved out of a particular lot or any part of a particular lot under any form of lease, such rent shall be conclusively presumed to have been extinguished and the landlord shall not thereafter set up any claim thereto or to the reversion in the lot out of which it issued, or have the right to institute any suit, action or proceeding whatsoever to recover said rent or said lot; but in case such landlord shall be under any legal disability when such period of twenty years of non-demand or non-payment shall expire, he shall have two years after the removal of such disability within which to assert his rights." It is not contended that the owners of the ground rent created by the sub-

170

lease have been under any such disability as laid down in the above. It appears from the record that the late Nathan Bass first acquired title to this property August 10th, 1894, and held it to June 22nd, 1896; that Adolph Sauber owned it from 1896 to 1898, when Benjamin Offrevich, now Offit, acquired and held it from 1898 to 1899; that Nathan Bass acquired it a second time in 1899, and held it until 1912, when he sold it to Aaron Roseman; and Roseman conveyed it back to Bass on August 28th, 1915, since which time Bass or his representatives have owned it. This covers a period of 33 years, of which period Bass owned it approximately 27 years; it being owned during the remaining 6 years of this period by Roseman 3 years, Offervich one year, and Sauber 2 years. At the time the testimony was taken in the case Nathan Bass, of course, was dead, and the record shows that Adolph Sauber was also dead. Those who testified in the case in respect to the payment of or demand for rent were Morris Sclaen, who lived on a portion of the property in question and rented it from Bass for about 23 or 24 years, Myer Sternburg, an attorney, who was the committee for the person and property of Bass from April, 1922, to March, 1924, Simon Hornstein, trustee under a deed of trust executed by Bass on March 4th, 1924, Aaron Roseman, the owner of the property for three years, Benjamin Offervich (Offit), who owned it for one year, and Sydney R. Traub, the administrator. Their combined testimony does not cover the period of any consecutive 20 years subsequent to the date of the sublease, but they do testify to particular years from 1894 to 1927, a period of 33 years. Their testimony is to the effect that, during the periods testified to by each, no rent was ever demanded of or paid by them except the original ground rent of $80 payable on March 1st, which was paid to the various owners of that rent at the time it was the duty of each one of the witnesses testifying to pay the same. It is clear that no one of these witnesses ever paid the rent, or any portion thereof, which was reserved in the sublease of 1864.

It is settled that if no rent is demanded or paid for more than 20 consecutive years, such rent reserved is extinguished.

*Safe Deposit & Trust Co. v. Marburg,* 110 Md. 410; *Lewis
v. Kinnaird,* 104 Md. 653. The testimony in this case does
not conclusively establish that the rent was not paid or de-
manded for any 20 consecutive years, but there is not the
slightest indication that it ever has been either paid or de-
manded from the time of its creation. There is no doubt
about its creation, as the record establishes that. But that is
the sole evidence upon which we would have to say that the
rent thereby created is now in existence and enforceable. In
the case of *Speed v. Smith,* 4 Md. Ch. 299, at 306, in which
the question now before us was considered, the chancellor
said: "But seeing that the lease from Howard is upwards of
56 years old, and that no proof has been produced to show
that this particular parcel of property is now held liable for
the rent of $20 reserved by that lease, I cannot think it would
be proper to conclude that it is so liable. The burden of
proof is upon the exceptant, and I am by no means prepared
to say he has made his case out, simply by the adduction of
a lease executed more than half a century ago, without any
proof whatever that the rent reserved by the lease has been
exacted from the owner of this particular parcel." The above
language has been quoted and approved by this court in *Lewis
v. Kinnaird, supra; Safe Deposit & Tr. Co. v. Marburg,
supra,* and *Connaughton v. Bernard,* 84 Md. 577. In the last
mentioned case Judge Boyd said: "In *Speed, Trustee, v.
Smith,* 4 Md. Ch. 299, the advertisement stated that the prop-
erty sold was subject to a ground rent of 'only ten dollars.'
The purchaser excepted to the sale and produced a lease of
property of which that sold was a part, wherein a rent of
twenty dollars per annum was reserved. There was no evi-
dence that the particular parcel sold was ever held for the
twenty dollars rent, and the chancellor decided that the mere
production of such a lease, which was over fifty years old,
did not sustain the exceptant's case without some proof that
the rent reserved had been exacted from the owner of the
part sold."

In the case of *Barnitz v. Reddington,* 80 Md. 622, where
in 1793 the owner of a tract of land including the lot in ques-

tion leased the whole tract for 99 years, renewable forever, subject to a yearly rent of 2 pounds 14 shillings, and in the same year it was subleased, reserving a rent of 1 pound 4 shillings per annum, there was evidence to show that for more than 50 years no other rent had been demanded from the owners of the lot. This court said: "As there is not only no evidence of any other rent except this one pound four shillings reserved in Quinn's deed to Price, but there is some proof that for more than fifty years no other rent has been exacted, it is reasonable to conclude, as the chancellor did in *Speed v. Smith,* 4 Md. Ch. 231 (Brantly's edition), that this lot was not liable for any other rent."

The appellant here is excepting to the ratification of a sale reported as made to him, and the clear indication, from the decisions of this court, is that the burden of proof is upon the exceptant, and where the exceptant offers no evidence other than the lease made many years before, and all of the testimony offered tends to prove that no rent ever was demanded or paid, the burden resting upon him has not been met. What the statute requires is that evidence be adduced which satisfies the court that no rent has been demanded or paid within 20 years, and we have no hesitancy in saying that the evidence here is satisfactory on that point. We are of the opinion that the facts in this case bring it fully within the principles previously laid down by this court, and that we would not be justified in holding that the subrent is now in existence. But without regard to whether it is or not, we think the covenant in the sublease that the lessee, his personal representatives or assigns, should at all times peaceably hold and enjoy the premises without let or interruption from the lessors or any person whomsoever, "freed clear and protected from the claims and demands of all persons whomsoever, for or on account of any other rent than that hereby reserved thereon," fully protects the appellant from the possibility of being required to pay more than the one rent of $80. If the subrent be now in existence, the owner of that rent or reversion would be bound by the covenant stated, as such a covenant runs with the reversion, and is binding upon

any holder of the reversionary interest. *Wahl v. Barroll,* 8 Gill, 294. If the present owner of the subground rent should demand of the appellant the rent reserved by the sublease, and be able to show that it had not been extinguished, he would be met with the covenant that he could not demand from the owner of this lot rents aggregating more than $80, and if the appellant were compelled to pay the original rent of $80, no more or greater rent could be collected from him. Finding no error in the action of the orphans' court, its order must be affirmed.

*Order affirmed, with costs to the appellee.*