MILLARD C. OXENHAM et al v. JOHN W. MITCHELL et al.

[No. 75, October Term, 1930.]

270

*Decided January 15th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edward T. Miller,* for the appellants.

*Alfred L. Tharp,* submitting on brief, for John W. Mitchell, appellee.

PARKE, J., delivered the opinion of the Court.

Many years ago James A. Oxenham was the owner of a tract of land called "Asbury," containing 317 acres, in Talbot County, and he desired to borrow $3,500 of William M. Poisal. He offered the land to secure the loan, but Poisal demanded the usurious rate of eight per centum, and the loan and the lien to be put in a form which would at once conceal the usury and preserve the essential features of a mortgage decd. So a scheme was devised and was executed. On December 21st, 1877, Oxenham and wife conveyed the tract of land to Poisal in fee simple; and simultaneously Poisal granted the same tract to Oxenham for a term of ninety-nine years from December 21st, 1877, renewable forever, upon an annual rental of $280, payable on the 20th of August, subject to the provision that at any time during the

period of two years beginning on August 20th, 1878, on the payment to the said Poisal, his heirs and assigns, by the said Oxenham, his heirs and assigns, of the sum of $3,500, and all rent owing and apportioned to the day of settlement, the said Poisal, his heirs and assigns, would grant and convey to the said Oxenham, his heirs and assigns, the land and premises demised, free from the rent reserved and of all the estate and interest of the said Poisal and all claiming under him whether by way of dower or otherwise.

Oxenham remained in possession of the land and died intestate without paying the principal of the debt, and left surviving him a widow and eight children as his next of kin and heirs at law. Letters of administration were granted to his widow, Elizabeth F. Oxenham, on September 19th, 1882, and two days later the widow and the heirs at law of James A. Oxenham paid to Poisal the full sum of $3,500 and all the rent or interest apportioned to the day of settlement, and Poisal and his wife, pursuant to the covenant of the grant, conveyed in fee simple the tract of land mentioned to the widow and heirs at law of James A. Oxenham.

On October 3rd, 1882, the administratrix returned an inventory of the personal estate of her intestate that did not embrace any leasehold property; and on December 28th, 1882, the Orphans' Court of Talbot County passed her first and final administration account, which showed a residue of $916.32 for distribution.

The widow and heirs remained in possession of the property until a bill in equity was filed for the purpose of making sale of the tract in question and of several other parcels of land of which James A. Oxenham died seised and possessed. There is no dispute that all the parties in interest were joined in the proceedings, and a sale was decreed on January 1st, 1927, and a trustee appointed, who made sale and conveyed on August 4th, 1927, upon the payment of the purchase money of $21,500 for all the tracts, the interest of the parties to the cause in the land to the purchasers, Millard C. Oxenham, Hester E. Oxenham, and James A. Oxenham, as joint tenants. The decree was passed in the belief that an

272

absolute fee simple title was the subject of the adjudication, and the sale was so made, and the deed specifically conveyed all the right and title of the parties to the cause. An audit was stated and the proceeds of sale distributed among the parties in interest.

The three joint tenants took possession of the property under the deed, and one of the joint tenants, James A. Oxenham, having died on March 4th, 1928, Millard C. Oxenham and Hester E. Oxenham became the surviving joint tenants, who sold the tract involved, called "Asbury," in 1929. The purchasers had the title examined, and declined to comply with their contract on the ground that the leasehold estate created in 1877 was subsisting and an unadministered asset of the estate of the lessee, James A. Oxenham, in whose estate a purporting final administration account had been passed in 1882. The owners took counsel, and, notwithstanding the facts here stated and the further circumstances that since September 19th, 1882, the specific rent reserved, or any part of it, had never been paid or demanded, and that the property had been so enjoyed and held as an absolute fee simple estate by the joint tenants and those under whom they claimed since 1882, the owners were informed that to give a good title it would be necessary to have a further administration upon this extinct leasehold estate. Code, art. 53, sec. 27; *Safe Deposit Co. v. Marburg*, 110 Md. 410, 72 A. 839; *Lewis v. Kinnaird*, 104 Md. 653, 65 A. 365; *Sowers v. Keedy*, 135 Md. 448, 109 A. 143; *Rosenthal v. Traub*, 155 Md. 167, 169-172, 141 A. 558.

In pursuance of this advice, Millard C. Oxenham, a joint tenant, as the only surviving son of the original owner and lessee, James A. Oxenham, filed on October 1st, 1929, in the Orphans' Court of Talbot County a petition wherein is set forth the circumstances which induced the execution of the deed and lease between Oxenham and Poisal instead of the usual mortgage deed, and the further fact that the leasehold interest had never been considered an asset of his father's estate, but that "because of the existence of said lease your petitioner is advised that further administration on said es-

tate will be necessary." The petitioner renounced his right to administer, and a third party was appointed administrator *de bonis non,* who, on October 3rd, 1929, filed an inventory and appraisal, containing as its single item the ancient leasehold estate in the tract called "Asbury" and its appraisement at $6,000. The administrator *de bonis non* thereupon filed on October 8th a petition and report, wherein he laid before the orphans' court a complete narrative of all that had previously occurred. He further stated that the joint tenants, Millard C. Oxenham and Hester E. Oxenham, his wife, have the entire ownership of Asbury, except the "bare legal title to the above mentioned leasehold interest," and, in order to perfect their title, are willing to pay the appraised value of the leasehold estate, and that he recommended that he be authorized to make the sale. The court authorized the sale, which was reported and finally ratified and confirmed. The two joint tenants paid the purchase price, and on March 4th, 1930, the administrator *d. b. n.* reported to the orphans' court that, after stating his administration account, there remained in his hands, as the residue of the sale, the net sum of $5,449.66 for distribution among the next of kin of the decedent, and set forth the next of kin at the death of the intestate, and those taking under them by representation. The administrator then repeated the circumstances which have been here recited, and the claim of the joint tenants that, because of them and their substantial ownership, which was only incomplete to the extent of the naked legal title in the leasehold estate at the time the proceedings to clear the title were begun, the joint tenants were entitled to the net proceeds of sale of the alleged leasehold estate in Asbury. Because of this situation, the administrator *d. b. n.* then prayed for a distribution or payment of the fund to be made under the provisions of section 148 of article 93 of the Code, and the orphans' court fixed a day for this purpose, and the prescribed notice was given. As a result of this action, Millard C. Oxenham and Hester E. Oxenham, joint tenants, first filed their claim to the whole residue by virtue of their rights as joint owners; and then, later, they filed a claim for the

yearly rent of $280 from 1882 to 1930, but reduced its large aggregate to $6,000 to correspond to the sum they had been required to pay to the administrator *d. b. n.* to acquire the legal title to the leasehold interest in Asbury. Five of the parties in interest assigned to the joint tenants their rights, and on the day fixed by the orphans' court John W. Mitchell, a sole legatee of a dead daughter of the intestate, appeared and objected by counsel to the account filed by the joint tenants, and demanded full proof. The only testimony offered was that of the surviving son, one of the joint tenants, Millard C. Oxenham, who was put upon the stand by the attorney for Mitchell, the sole objector.

Oxenham's testimony established the substance of what has been set forth, and that he had acted in the belief that the administration *de bonis non* was a mere formality to perfect his and his wife's title, and that, after the costs and expenses were deducted, he and his wife as joint tenants would receive all the residue of the amount they had paid to the administrator *d. b. n.* In order to have additional assurance, he put in his claim for rent, and took assignments from some of the parties in interest. The distribution made by the orphans' court demonstrated that his belated precautions were well advised. By its decree of June 24th, 1930, the orphans' court adjudged 53.33+ per centum of the residue to Millard C. Oxenham as next of kin and legal representative of other next of kin of the intestate; 20.16+ per centum to Millard C. Oxenham and Hester E. Oxenham as the assignees of other legal representatives of dead next of kin of the intestate; and the remaining 26.50+ per centum to the remaining four legal representatives of dead children of the intestate. An appeal was taken on July 22nd, 1930, by Millard C. Oxenham and Hester E. Oxenham.

It has been necessary to state the gradual development of an exceptional and complicated situation in order to perceive and understand why a comparatively few facts will control. The basic fact is that the deed and demise were actually a cover for a loan of $3,500 at eight per cent. interest with a tract of land as the pledge for its payment.

The jurisdiction of the orphans' court is administered upon equitable principles. *Phelp's Jurid. Eq.*, sec. 164(7); *Orem v. Wrightson,* 51 Md. 34, 43-48; *Linthicum v. Polk,* 93 Md. 84, 94-96, 48A. 842; *McComas v. Wiley,* 132 Md. 406, 410, 104 A. 52; *Randall v. Hodges,* 3 Bland. 478. And it is well settled in equity that a conveyance, whatever may be its form, if it be taken as a security for an existing debt or a contemporaneous loan, will be treated as a mortgage, so as to permit the debtor, and those deriving title through him, to redeem the land from the operation of the instrument so employed. *Venable's Syllabus on Law of Real Property* (Brodie Ed.), 226-228; *Montague v. Sewell,* 57 Md. 407 (deed and lease); *Odd Fellows v. Merklin,* 65 Md. 579, 5 A. 544 (deed and lease); *Packard v. Corp. for Relief of Widows,* 77 Md. 240, 26 A. 411; *Pickett v. Wadlow,* 94 Md. 564, 567, 51 A. 423; *Artz v. Grove,* 21 Md. 456; *Baugher v. Merryman,* 32 Md. 185; *Booth v. Robinson,* 55 Md. 419, 450.

Not only was this the nature of the real transaction, with a right of redemption consequently inhering for the benefit of the owner of the land and his widow and heirs at law, but the right of redemption, upon the payment of the debt as prescribed, was expressly reserved by the demise for the benefit of the lessee, his heirs or assigns. Whether the concealing form of a deed and demise be stripped away and the documents be regarded as a mortgage security, or the deed and demise accepted according to their tenor, the right of redemption in either event exists, as it is implied in the one case and explicitly conferred by the lease in the other. Consequently, while Oxenham lived, the legal title to the land was in Poisal, the mortgagee, as security for the debt, with the equity of redemption in the land in Oxenham. When Oxenham died intestate, the legal title was unaffected in Poisal, the mortgagee, but the equity of redemption passed to the heirs at law of Oxenham, subject to the dower rights of the widow. Neither Oxenham's estate in life, nor that of his heirs at law and widow at his death intestate, was personalty, but was realty which passed by law according to

the statute of descent. *Venable's Syllabus of Law of Real Property* (Brodie Ed.), 197-199; *Washington Fire Ins. Co. v. Kelly,* 32 Md. 421. *Tiffany on Real Property* (2nd Ed.), sec. 609. So, when the widow and heirs at law of Oxenham paid to the mortgagee the full amount of the principal and interest of the debt for which documents of title had been passed to pledge the land for the loan, the heirs and widow had redeemed the land and were entitled to receive such assurances from the mortgagee as would vest an unincumbered fee simple estate in the land in the heirs at law, subject to the dower of the widow. *Tiffany on Real Property* (2nd Ed.), sec. 640.

In the present case, the terms of the demise provided the simplest and most effective method of making the record title conform to the actual estate of the heirs and widow in the land. In the demise, the ostensible owner of the estate in reversion, but the mortgagee in fact, had covenanted, when paid the sum of $3,500, the amount of the mortgage debt, and rent, which was a disguise for an usurious interest, to grant and convey to the lessee (mortgagor), "his heirs or assigns, by a good and sufficient deed the land and premises hereby demised, freed from the yearly rent of two hundred and eighty dollars, hereby reserved, and from all estate and interest therein of the said William M. Poisal and all persons claiming under him whether by way of dower or otherwise." The lessor waived the limitation of time within which the right to redeem was to be exercised, and this covenant was fulfilled on September 21st, 1882, by such a deed to the heirs at law and widow. When this deed was executed and delivered, the lease, whether regarded as a mortgage or a demise, ceased to exist; and thereafter the heirs at law, subjct to the dower of the widow, were seised and possessed of an unincumbered fee simple estate in Asbury. *Montague v. Sewell,* 57 Md. 407, 411-418; *Grand Order of Odd Fellows v. Merklin,* 65 Md. 579, 586, 5 A. 544; *Packard v. Corp. for Relief of Widows,* 77 Md. 240, 26 A. 411; *Safe Deposit Co. v. Marburg,* 110 Md. 410, 417, 418, 72 A. 839; *Jones v. Rose,* 96 Md. 483, 54 A. 69; *Tiffany on Landlord and*

*Tenant,* vol. 2, secs. 256, 263, 265; *Tiffany on Real Property* (2nd Ed.), sec. 59(c). Consequently, when the administratrix of the personal estate of James A. Oxenham filed an inventory and appraisement on October 3rd, 1882, there was no estate for years to list in the return, and none upon which she could administer. The heirs at law and the widow, therefore, held and enjoyed the land in fee simple by right of descent and survivorship, and, on the widow's death, the land was sold for the purpose of partition, and the proceeds of its sale as an unincumbered fee simple estate were distributed among all the parties in interest.

The joint tenants, therefore, were seised and possessed of a good and marketable title to a fee simple estate. The purporting lease for years did not affect their title, as, by the exercise of a right given by its terms, it had long since been determined. No effort to revive this demise could impart vitality to its obligations, yet, after forty-seven years of repose, its ghost is made the basis for an administration, and $6,000 is paid by the frightened owners to acquire an estate which was embraced in the one which they already enjoyed. The supplementary administration, the sale, its ratification, and the grant to the purchasers, concerned nothing which had an existence in law or in equity, and the single thing effected was to secure $6,000 from the joint tenants without any consideration moving to them. These remarkable proceedings were the result of a mistake, which was unquestionably honest in origin, and common to the parties. The mistake was that the purporting lease was subsisting, and would have to be acquired by the joint tenants through an administrator *de bonis non* in order to perfect and make merchantable their title. It was a common mistake, since it was made by the attorney examining the title, believed by his clients, the vendees, and by the joint owners of the property, the vendors, when communicated to them, and accepted as correct by the orphans' court when they granted letters of administration to the attorney and ratified the sale he had made of the leasehold to the joint tenants for $6,000. The purchasers received nothing by the sale and grant of the

administrator *d. b. n.*, although the money paid by them was upon the mistaken belief that they had bought, and been granted, the legal title to a subsisting leasehold estate. On the other hand, the administrator *d. b. n.* supposed he had for sale and grant legal title to a valuable leasehold estate which proves to have no legal existence and to be incapable of assignment.

The administrator *d. b. n.* not only conveyed nothing, but he lost nothing, for the distributees of his intestate, since they, or those under whom they claim as their legal representatives, had already received their respective shares of the full fee simple value of Asbury in its sale for the purpose of partition in 1927. It is a clear case of the administrator *d. b. n.* having received, as the consequence of a common mistake, a large sum of money without parting with anything, and of its being, under the circumstances stated, unconscionable for the administrator to retain money which is now in his hands for distribution under the statute. After the deduction of the costs and expenses, there remains of the purchase price the sum of $5,499.66. Upon every equitable consideration and principle of fair dealing, a court should not permit this fund to be diverted from its real owners because of the common misapprehension of their rights. See *Miller's Equity*, sec. 501, and cases in notes. In a court of conscience, a total failure of consideration should prevent the beneficiaries from receiving the purchase money when the transaction has not proceeded to a distribution of the money, and the matter is between the purchaser and the parties ultimately to receive the proceeds of sale. *Supra; Glenn v. Clapp*, 11 G. & J. 1, 10; *Earle v. Turton*, 26 Md. 23, 35-36; *Preston v. Fryer*, 38 Md. 221; 224; *Ex parte James*, 9 Ch. App. 609; *Ex parte Simmonds*, L. R., 16 Q. B. 308; *Keener on Quasi-Contracts*, pp. 94, 95; *Woodward on Law of Quasi Contracts*, sec. 41; *In re Opera, Limited* (1891), 2 Ch. 154; *Gillig v. Grant*, 23 App. Div. 596, 49 N. Y. S. 78.

The rule of law and equity is that money paid under mistake may be recovered when it is against good conscience for the recipient to retain the money. This rule is subject to

the general, but not universal, exception that money paid under mistake of law cannot be recovered. *Supra.* The rule and its exception are familiar, and have been enforced by this court in many instances, which, however, do not afford precedents to control the pending case. See *Helser v. State,* 128 Md. 228, 97 A. 539; *Baltimore v. Harvey,* 118 Md. 275, 84 A. 487; *Baltimore v. Hussey,* 67 Md. 112, 9 A. 19; *Baltimore v. Lefferman,* 4 Gill, 425, 45 Am. Dec. 145; *Morris v. Baltimore,* 5 Gill, 244; *Lester v. Baltimore,* 29 Md. 415; *Baltimore v. Porter,* 18 Md. 284; *George's Creek Coal Co. v. County Commrs.,* 59 Md. 255; *Potomac Coal Co. v. Cumberland & Penna. R. Co.,* 38 Md. 226; *Sisson v. Baltimore,* 51 Md. 83; *Baker v. Baker,* 94 Md. 633, 635, 51 A. 566. The case of *Schwarzenbach v. Odorless etc. Co.,* 65 Md. 34, 3 A. 676, is one of the purchase of the use of a patent privilege, which proved afterwards to be invalid and turns upon its own special facts. See *Woodward on Quasi Contracts,* sec. 62; *Carroll v. Bowling,* 151 Md. 59, 67, 133 A. 851.

The difficulty has been to distinguish between a question of law and one of fact; and there are frequent records where the question is a mixed one of both law and fact. Here the parties knew the facts, which were partly of documents of record and partly in parol, and which occurred in the course of over a half century. These combined facts, which they knew, and the law, which they were presumed to know, when taken and considered together, issued from this conjunction and interaction of law, fact, and construction of documents as another fact. *Snell's Equity* (15th Ed.), 433, 434; *Story's Eq. Juris.* (14th Ed.), secs. 166, 184. This fact was that the lease in question had determined; but the joint tenants, in the erroneous conviction that the lease was extant, procured an administration in order to acquire the leasehold estate; bought and paid for and received a grant of the term, which neither the joint tenants, the administrator, nor the orphans' court, would have done or united in doing, if all had not been animated by the common misapprehension that the legal estate in the lease was subsisting. This misconcep-

tion is called by eminent authority a mistake of fact, although by some regarded as one of law. It is justly observed by Pomeroy: "A private legal right, title, estate, interest, duty or liability is always a very complex conception. It necessarily depends so much upon conditions of fact, that it is difficult, if not impossible, to form a distinct notion of a private legal right, interest or liability separated from the facts in which it is involved and upon which it depends. Mistakes, therefore, of a person with respect to his own private legal rights and liabilities may be properly regarded—as in a great measure they really are—and may be dealt with as mistakes of fact. Courts have constantly felt and acted upon this view, though not always avowedly." *Pomeroy's Equity Jurisprudence* (4th Ed.), sec. 849. It is not the less a representation of fact because the fact stated involves a conclusion of law, as pointed out by Sir George Jessel in *Eaglesfield v. Marquis of Londonderry*, L. R. 4 Ch. Div. 693, 702, 703; *Cooper v. Phibbs*, L. R. 2 H. L. 149, 170; *Story's Eq. Juris* (14th Ed.), sec. 186.

In *Lansdowne v. Lansdowne*, 2 Jac. & W. 205, Mos. 364, 365, the facts are analogous in many respects to the case at bar. To state the facts shortly, the plaintiff was the only son of the eldest brother of an intestate. He had a dispute with his uncle, a younger brother of the intestate, who was a second son, concerning their respective rights to inherit the land of the intestate. It was agreed by them to consult a schoolmaster, who looked in a book called the *Clerk's Remembrancer*, where he found the law laid down that "land could not ascend, but always descended," and he thereupon informed the pair that the land went to the younger brother, the plaintiff's uncle. Upon this decision, the plaintiff and his uncle agreed to share the land between them, and conveyances were executed to carry out this arrangement. The result was, of course, that the plaintiff, through a mistake of law, conveyed away lands which clearly belonged to himself. On the discovery of his error, he filed his bill to be relieved, which was decreed. See note to section 842 of *Pomeroy's Equity Jurisprudence*, from which this statement

is taken. So, in *Cooper v. Phibbs,* L. R. 2 H. L. 149, A, being ignorant that certain property belonging to himself, and supposing that it belonged to B, agreed to take a lease of it from B at a certain rent. There was no fraud, no unfair conduct, all the parties equally knew the facts. The House of Lords set aside the agreement on account of the mistake. Again, in *Blakeman v. Blakeman,* 39 Conn. 320, a right of way had become extinguished by the purchase of the servient estate of A, the owner of the dominant estate. A afterwards conveyed the dominant estate to B by a deed which granted the land "with its privileges and appurtenances," but did not in express terms mention the right of way. A and B were both ignorant of the legal rule under which the right of way had become extinguished, and supposed it still existed; and the price paid by B was sufficient to cover the right of way. It was held that a court of equity would relieve B by correcting the mistake.

And in *Strickland v. Turner* (1852) 7 Exch. 208, at the date when the sale of a life annuity was completed, the life had dropped unknown to both vendor and purchaser, and it was held that the purchase money might be recovered back as on a total failure of consideration. Likewise, in *Hitchcock v. Giddings* (1817), 4 Pri. (Ex. in Eq.) 135, Dan. 1, 18 R. R. 725, where a remainderman in fee expectant on an estate tail had sold his interest, a recovery having been already suffered unknown to the parties, a bond given to secure the purchase money was set aside. And see *Cochrane v. Willis* (1865), L. R. 1 Ch. 58; *Allen v. Hammond,* 11 Pet. 63, 71, 9 L. Ed. 633.

In its final analysis, the joint tenants had purchased and paid for property which was already their own, and what is said in *Wald's Pollock on Contracts* (3rd Ed., by Williston) at page 615, is strikingly in point. The eminent author writes: The case of *Bingham v. Bingham* (1748) 1 Ves. Sr. 126, which was relied on in the argument of *Cochrane v. Willis,* and in the judgment of *Turner L. J.,* must be considered as belonging to this class. As in *Cochrane v. Willis,* the substance of the facts was that purchaser was dealing

with his own property, not knowing that it was his. This consideration seems to remove the doubt expressed by *Story* (*Eq. Juris,* sec. 124), who criticises it as a case in which relief was given against a mere mistake of law. But, with all respect for that eminent writer, his objection is inapplicable, for the case does not rest on mistake as a ground of special relief at all. There was a total failure of the supposed subject-matter of the transaction, or perhaps we should say it was legally impossible. We have already pointed out the resemblance of this class of cases to some of these considered in the last chapter. The one party could not buy what was his own already, nor could the other (in the words of the judgment as reported) be allowed "to run away with the money in consideration of the sale of an estate to which he had no right." So we find it treated in the Roman law quite apart from any question of mistake, except as to the right of recovering back money paid under the agreement. A stipulation to purchase one's own property is *"naturali ratione inutilis"* as much as if the thing was destroyed, or not capable of being private property. Such an agreement is naught both at law and in equity, without reference to the belief or motive which determined it."

In *Martin v. McCormick,* 8 N. Y. 331, the action was by the owner of land to recover money paid in consideration of the assignment to him of a lease given to the defendant by a third party. It appeared that the lease was void, a fact, unknown to both parties at the time of the assignment. The court there said: "The parties did not deal with each other upon the footing of a compromise of a doubtful or doubted claim, but upon the ground of a conceded right in the defendant. He was assumed by both of them to have become the owner of a term for one hundred years in the premises in question, and the parties dealt with each other upon that basis for the sale and purchase of that interest. * * * Now the term which was the subject of the contract, contrary to the supposition of both parties, had no existence, and in all that class of cases where there is mutual error as to the

existence of the subject matter of the contract, a rescission may be had." Page 334 of 8 N. Y.

In the case at bar, the purchasers not only bought and paid for their own property, but they did so because of a mistake, common to all the parties, as to the estate of the vendees in the subject-matter of the transaction, and it was the intention of the administrator to sell and grant, as well as the buyers to buy and acquire, the estate contemplated by the parties as existing. If it had not been mutually believed that the subject-matter contracted for did exist, the parties would not have made the contract. The existence of the subject-matter as contemplated was therefore presupposed as essential to the agreement; and the contract was not merely the transfer of the right to the subject-matter of the sale, if such subject-matter existed, the vendees taking their chances as to the subject-matter's existence or nonexistence.

There being in this case no element of compromise, fraud, duress, or neglect, it follows that the vendees may claim a right to recover, as for a failure of consideration, money paid in the purchase of what has proved to be a nonexisting thing, the vendees supposing the thing to be in existence when they paid the money of which a recovery is sought. *Keener on Quasi-Contracts, pp.* 130-138; *Woodward on Law of Quasi-Contracts,* sec. 60; *Brantley on Contracts* (2d Ed.), sec. 74; 3 *Williston on Contracts,* sec. 1566; *Story's Eq Juris.* (14th Ed.), secs. 212, 213; *Strickland v. Turner,* 7 Exch. 208; *Gurney v. Womersley,* 4 E. & B. 133; *Jones v. Ryde,* 5 Taunt, 488; *Wood v. Sheldon,* 42 N. J. Law, 421; *Gompertz v. Bartlett,* 2 E. & B. 849; *Hitchcock v. Giddings,* 4 Price, 135; *McGovern v. Avery,* 37 Mich. 120 (sale by executors, title failing); *Franklin v. Long,* 7 G. & J. 407, 420, 421; *Seemuller & Co. v. Fuchs,* 64 Md. 217, 1 A. 120; *Wilson v. Md. Life Ins. Co.,* 60 Md. 150, 156, 157; *Prince de Bearn v. Winans,* 111 Md. 434, 470, 473-474, 477, 74 A. 626; *George's Creek Coal Co. v. County Commrs.,* 59 Md. 255, 260; *Broumel v. White,* 87 Md. 521, 526, 527, 39 A. 1047; *Lammot v. Bowly,* 6 H. & J. 500, 524-526; *Citi-*

zens' Bank v. Grafflin, 31 Md. 507, 519; Balto. & S. R. Co. v. Faunce, 6 Gill, 69, 76-78.

The doctrine here applied is also illustrated by In re Mulholland's Estate, 224 Pa. 536, 73 A. 932, where an executor sold what he thought was the land of his testator, executed a deed, and received the purchase money, and before it was distributed it was ascertained that the testator had no title, and the deed conveyed nothing, and it was held that there should be a refunding of the amount to the purchaser.

Since the basis upon which the claimant is allowed to recover is the unjust enrichment of the defendant, the plaintiff must generally restore to the latter whatever has been received as a condition of his recovery. Keener on Quasi Contracts, 138. Here there is nothing that the vendees have acquired, but, for their own mistaken purpose, they caused these proceedings to be begun, so the administrator de bonis non will be entitled to be reimbursed the costs and expenses of the administration, which will reduce the amount for which he is accountable to $5,449.66, with such interest as he may receive, less the costs of these proceedings in the orphans' court and on this appeal. The residue of the fund should be paid to the joint tenants, Millard C. Oxenham and Hester E. Oxenham, his wife, as they are the parties entitled, for the reasons assigned. Supra; Gallagher v. Martin, 102 Md. 115, 118, 119, 62 A. 247.

The motion to dismiss the appeal cannot prevail, as the failure to transmit the record within the prescribed period was not due to the appellants, but, as appears by his affidavit, to be referable wholly to the omission of the register of wills. Miller v. Gehr, 91 Md. 714, 47 A. 1032; Bagby's Law of Executors and Adm'rs (2nd Ed.), sec. 173.

> Decree of orphans' court reversed, and cause remanded for further proceedings in conformity with this opinion; the costs in the orphans' court and on appeal to be paid out of the funds in the hands of the administrator d. b. n.